PRECEDENTIAL
UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-2851
_____

STEVEN PAPP, individually and as Executor and Executor
as Prosequendum of the Estate of MARY SUE PAPP

v.

FORE-KAST SALES CO., INC.;
HONEYWELL INTERNATIONAL, INC.,
f/k/a Allied Signal, Inc., as successor-in-interest
to the Bendix Corporation;
NEW BRUNSWICK PLATING CO., f/k/a
New Brunswick Nickel and Chrome Plating;
UNION CARBIDE CORPORATION; JOHN DOE
CORPORATIONS 1-50;
JOHN DOE CORPORATIONS 51-100; GOODRICH
CORP., f/k/a
B.F. Goodrich Co.; THE GOODYEAR TIRE & RUBBER
CO.;
THE BOEING COMPANY, individually and as successor by
merger to the McDonnell Douglas Corporation

The Boeing Company,
                                        Appellant
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 3-13-cv-5940)
District Judge: Honorable Peter G. Sheridan
_____

Argued
September 9, 2016

Before: JORDAN, VANASKIE, and KRAUSE, *Circuit Judges*.

(Filed: November 22, 2016)
_____

Amaryah K. Bocchino
Jason A. Cincilla
Bryan P. Smith
Manion Gaynor & Manning
1007 N. Orange Street
Tenth Floor
Wilmington, DE   19801

Martin F. Gaynor, III   [ARGUED]
Nicholas D. Stellakis
Manion Gaynor & Manning
125 High Street
Boston, MA   02110

Brian D. Gross
Manion Gaynor & Manning
One Citizens Plaza
Suite 620
Providence, RI   02903

Marc S. Gaffrey
Hoagland Longo Moran Dunst & Doukas
40 Paterson Street
P.O. Box 480, Room 301
New Brunswick, NJ 08903

    *Counsel for Appellant, Boeing Co.*

Jeffrey P. Blumstein   [ARGUED]
Robert E. Lytle
Robert G. Stevens, Jr.
Szaferman Lakind Blumstein & Blader
101 Grovers Mill Road, Suite 200
Lawrenceville, NJ   08649

Joseph J. Mandia
Levy Konigsberg
800 Third Avenue
13th Floor
New York, NY   10022
    *Counsel for Appellee*

_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

Steven Papp filed this failure-to-warn product liability suit against The Boeing Company in the Superior Court of New Jersey, alleging that his late wife, Mary,[1] was made ill by exposure to asbestos from a Boeing aircraft. Boeing removed Papp's failure-to-warn suit to the United States District Court for the District of New Jersey on the basis of the federal officer removal statute, 28 U.S.C. § 1442(a)(1). According to Boeing, it was acting as a government contractor when it engaged in the allegedly tortious conduct. After removal, Papp filed a motion to remand the case to state court, which the District Court granted. The District Court ruled that Boeing had failed to meet a "special burden" of establishing that a federal officer or agency affirmatively prohibited Boeing from warning third parties of the dangers of asbestos found in planes manufactured in the mid-twentieth century. Because we conclude that the federal officer removal statute extends to contractors who possess a colorable federal defense, and that Boeing made a sufficient showing of such a defense at the time of removal, we will reverse.

## I.  BACKGROUND

Papp, individually and on behalf of Mary's estate, alleges that Mary suffered secondary "take home" asbestos exposure while washing the work clothes of her first husband, Robert Keck. Keck had several jobs that exposed him to

---

[1] For clarity, and intending no disrespect by undue familiarity of address, throughout this opinion we refer to Mary Papp as "Mary" and to Steven Papp as "Papp."

asbestos, including one for the New Brunswick Plating Co. ("New Brunswick") in the late 1970s. While working for New Brunswick, Keck sandblasted the landing gear of World War II military cargo planes to prepare the gear for repairs. Papp contends that that process resulted in Keck having airborne asbestos fibers adhere to his clothing so that Mary, who handled the clothes, inhaled the asbestos.

On August 12, 2013, Papp sued a host of companies in New Jersey, alleging injuries to Mary from exposure to asbestos. He filed his First Amended Complaint (the "Complaint") on August 16, 2013, adding Boeing as a defendant, both individually and as successor-by-merger to the McDonnell Douglas Corporation. The Complaint did not indicate which Boeing or Douglas aircraft was claimed to have been the source of Mary's asbestos exposure. At her deposition taken on September 5, 2013, however, Mary specified that the landing gear Keck sandblasted was for a military cargo plane called the C-47. The C-47 was built by the Douglas Aircraft Company, a predecessor company to Boeing,[2] for the United States Navy and Air Force during World War II. Once Boeing learned the identity of the aircraft, it promptly removed the case to federal court pursuant to the federal officer removal statute, 28 U.S.C. § 1442(a)(1). That statute permits a defendant to remove a case to federal court from the state court where suit was originally filed, provided the allegedly culpable behavior took

_____

[2] For ease of reference, and as the District Court did, we refer to the Douglas Aircraft Company, McDonnell Douglas Corporation, and The Boeing Company collectively as "Boeing," unless otherwise specified.

5

place while the defendant was acting under the direction of a federal officer or agency.  28 U.S.C. § 1442(a)(1).

The federal officer removal statute requires that the defendant possess a colorable federal defense.  *In re Commonwealth's Motion to Appoint Counsel Against or Directed to Def. Ass'n of Phila.*, 790 F.3d 457, 466 (3d Cir. 2015) ("*Defender Ass'n*"), *cert. denied* 136 S. Ct. 980 & 994 (2016).  Boeing asserted that it was entitled to the federal defense of government contractor immunity because the C-47 was produced for, and under the specific supervision of, the United States military.  More specifically, Boeing argued that the government's oversight extended to labels and warnings for all parts of the aircraft, including those parts laden with the asbestos to which Keck, and in turn Mary, would later be exposed.  Boeing also states that, to the extent that the dangers of asbestos were known at the time, the government's knowledge of those dangers was superior to that of Boeing.  As part of its notice of removal, Boeing included the declaration of Larry Fogg (the "Fogg Declaration").  Fogg was a longtime employee of Douglas, who attested, based on his experience and review of the company's contracts and records, to the factual underpinnings of Boeing's legal position.

Papp moved to remand the case back to state court, and, of course, Boeing opposed remand.  The District Court granted the motion.  It held that, because Boeing was a contractor and not a federal officer, it had a "special burden" to demonstrate that it was acting under the control of the federal government.  (App. at 6.)  The Court said that, to prove removal jurisdiction, Boeing was required to show that it performed "*the complained-of activity* at the direction of

6

official federal authority." (App. at 8 (quotation marks and citation omitted)). Because the allegedly wrongful behavior was the failure to warn third parties of asbestos, the Court concluded that Boeing must show "that a federal officer or agency directly prohibited Boeing from issuing, or otherwise providing, warnings as to the risks associated with exposure to asbestos contained in products on which third-parties … worked or otherwise provided services." (App. at 11.) Using that standard, the Court decided that Boeing did not meet its special burden and that remand to state court was proper.

Boeing timely appealed.

## II.  DISCUSSION[3]

### A.  THE FEDERAL OFFICER REMOVAL STATUTE

"We review de novo whether the District Court had subject matter jurisdiction[,]" including a court's decision to remand for a lack of jurisdiction. *Defender Ass'n*, 790 F.3d at 465. At the heart of the present jurisdictional dispute is the federal officer removal statute, 28 U.S.C. § 1442(a)(1). As with any removal from state court, removal under § 1442(a)(1) begins with the filing of a notice "containing a short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). Because a motion to remand shares an essentially identical procedural posture with a challenge to subject matter jurisdiction under Federal Rule of Civil

---

[3] The District Court's jurisdiction is squarely at issue in this case, as discussed below. We have jurisdiction to review the District Court's order to remand pursuant to 28 U.S.C. §§ 1291 and 1447(d).

7

Procedure 12(b)(1), it is properly evaluated using the same analytical approach. *Leite v. Crane Co*., 749 F.3d 1117, 1121 (9th Cir.), *cert. denied*, 135 S. Ct. 361 (2014); *see also Defender Ass'n*, 790 F.3d at 466 (applying same 12(b)(1) framework to challenge of jurisdiction after removal).

"A challenge to subject matter jurisdiction under Rule 12(b)(1) may be either a facial or a factual attack." *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). A facial attack "challenges subject matter jurisdiction without disputing the facts alleged in the [notice of removal], and it requires the court to consider the allegations … as true." *Id.* (internal quotation marks and citation omitted). A factual attack, in contrast, disputes "the factual allegations underlying the [] assertion of jurisdiction," and involves the presentation of competing facts. [4] *Id.* Because Papp challenges jurisdiction facially, "we construe the facts in the removal

---

[4] While a factual attack on jurisdiction after removal is permissible, such a challenge should only be considered to the extent that the facts presented, if persuasive, would directly undermine one of the four elements of Section 1442 that must be present to confer jurisdiction. *See* infra at n.5 and related text. To the extent that such a challenge bleeds into the merits of the case, the District Court ought not address it in terms of jurisdiction. *See Davis*, 824 F.3d at 348; *see also Cuomo v. Crane Co*., 771 F.3d 113, 116 (2d Cir. 2014) ("To the extent that [a plaintiff's] competing testimony challenges the accuracy or reliability of [a defendant's] evidence, it does not undercut [the defendant's] right to removal, but rather raises the very type of factual dispute about the validity of the defense that should be submitted to the judgment of a federal court.").

notice in the light most favorable to [Boeing]." *Defender Ass'n*, 790 F.3d at 466.

The federal officer removal statute has existed in varying forms for some two-hundred years. Its central aim is protecting officers of the federal government from interference by litigation in state court while those officers are trying to carry out their duties. *Willingham v. Morgan*, 395 U.S. 402, 405-06 (1969). The statute has been amended over the years to permit removal in a broader set of circumstances. As currently framed and codified at 28 U.S.C. § 1442(a)(1), it provides, in relevant part:

> A civil action … commenced in a State court and that is against … any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending: (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office …

The "or any person acting under that officer" language effects an expansion of coverage that is relevant here. But the statute itself constitutes a break with tradition. "Section 1442(a) is an exception to the well-pleaded complaint rule, under which (absent diversity) a defendant may not remove a case to federal court unless the plaintiff's complaint establishes that the case arises under federal law." *Kircher v. Putnam Funds Trust*, 547 U.S. 633, 644 n.12 (2006) (internal quotation marks and citation omitted). "Unlike the general

removal statute, the federal officer removal statute is to be 'broadly construed' in favor of a federal forum." *Defender Ass'n*, 790 F.3d at 466-67 (quoting *Sun Buick, Inc. v. Saab Cars USA, Inc.,* 26 F.3d 1259, 1262 (3d Cir. 1994)); *see also Willingham*, 395 U.S. at 406 (noting that the scope of the federal officer removal statute "is not narrow or limited").

We have held that, in order to properly remove a case under § 1442(a)(1), a defendant must meet four requirements:
> (1) [the defendant] is a "person" within the meaning of the statute; (2) the [plaintiff's] claims are based upon the [defendant's] conduct "acting under" the United States, its agencies, or its officers; (3) the [plaintiff's] claims against [the defendant] are "for, or relating to" an act under color of federal office; and (4) [the defendant] raises a colorable federal defense to the [plaintiff's] claims.

*Defender Ass'n*, 790 F.3d at 467 (citation omitted).[5] We address each requirement in turn.

### 1. *Boeing is a "person" within the meaning of the statute*

Boeing's status as a "person" within the meaning of the statute is undisputed. Because §1442(a)(1) does not itself define the term "person," we look to § 1 of Title I of the

---

[5] Although the District Court's opinion seemed to elide the distinction between the "acting under" and "for or relating to" requirements, we address them separately, in keeping with the test we announced in *Defender Ass'n*., 790 F.3d at 467.

United States Code, which defines "person" to "include corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals." Under this definition, Boeing, a corporation, is in legal fact a person.

        2.    *Boeing was "acting under" a federal officer or agency*

The District Court's decision to remand this case was based on its conclusion that Boeing had failed to demonstrate that it was "acting under" a federal officer or agency when it did not warn of the dangers associated with asbestos. That conclusion was predicated on two errors. First, the Court wrongly believed that, because Boeing was a federal contractor and not a federal officer, it faced a "special burden" to demonstrate that it was acting under the control of the federal government. (App. at 6.) Second, the Court mistakenly posited that the only way Boeing could show it acted under a federal officer was to show "that a federal officer or agency directly prohibited Boeing" from warning third-parties of asbestos risks. (App. at 11.)

The "acting under" requirement, like the federal removal statute overall, is to be "liberally construe[d]" to cover actions that involve "an effort to *assist*, or to help *carry out*, the federal supervisor's duties or tasks." *Ruppel v. CBS Corp.*, 701 F.3d 1176, 1181 (7th Cir. 2012) (quoting *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 152 (2007)); *see also Defender Ass'n,* 790 F.3d at 468 (construing "acting under" liberally). The classic case of such assistance as it relates to government contractors is when "the private contractor acted under a federal officer or agency because the

11

contractors 'help[ed] the Government to produce an item that it need[ed].'" *Defender Ass'n*, 790 F.3d at 468 (quoting *Watson*, 551 U.S. at 153). When, as occurred in this instance, "the federal government uses a private corporation to achieve an end it would have otherwise used its own agents to complete," that contractor is "acting under" the authority of a federal officer. *Ruppel*, 701 F.3d at 1181; *see also Defender Ass'n*, 790 F.3d at 468-70 (discussing different ways in which an entity might "act under" a federal officer). Thus, the proposition that contractors bear some additional "special burden" is inconsistent with both precedent and the underlying objectives of the removal statute.

Further, we have explicitly rejected the notion that a defendant could only be "acting under" a federal officer if the complained-of conduct was done at the specific behest of the federal officer or agency. *See Defender Ass'n*, 790 F.3d at 470 ("[W]e disagree that the [defendant] is required to allege that the complained-of conduct *itself* was at the behest of a federal agency."). Instead, we have held that "[i]t is sufficient for the 'acting under' inquiry that the allegations are directed at the relationship between the [defendant] and the [federal officer or agency]." *Id.*

Considered under the proper standard, it is plain that the allegations against Boeing all involve conduct that occurred when it was "acting under" the direction of a federal officer or agency. In fact, we are presented here with an archetypal case. Papp's allegations are directed at actions Boeing took while working under a federal contract to produce an item the government needed, to wit, a military aircraft, and that the government otherwise would have been forced to produce on its own. That being so, Boeing easily

12

satisfies the "acting under" requirement of the § 1442(a)(1) inquiry.

> 3. *The Complaint rests on acts done "for or relating to" a federal officer or agency*

The next requirement, often referred to as the "nexus" or "causation" requirement, demands that the alleged conduct have been undertaken "for or relating to" a federal office. Under the prior version of the statute, which required a showing that a defendant had been sued "for any act under color of [federal] office," 28 U.S.C. § 1442(a)(1) (2011), a defendant had to "show a nexus, a causal connection between the charged conduct and asserted official authority." *Jefferson Cty., Ala. v. Acker*, 527 U.S. 423, 431 (1999) (quoting *Willingham*, 395 U.S. at 409 (internal quotation marks omitted)). But given the addition of the words "or relating to" in the 2011 revision of the statute – a change that was intended to "broaden the universe of acts that enable Federal officers to remove [suits] to Federal court," H.R. Rep. No. 112-17, pt. 1, at 6 (2011) – we have taken a more permissive view of this requirement. Specifically, we have held that, in order to meet the "for or relating to" requirement, "it is sufficient for there to be a connection or association between the act in question and the federal office." *Defender Ass'n*, 790 F.3d at 471 (internal quotation marks omitted).

Here, there is indeed a connection or association between the acts complained of by Papp and the federal government. At the heart of Papp's claim against Boeing is the failure to provide sufficient warning about the dangers of asbestos in the landing gear of the C-47 aircraft. In its notice of removal, Boeing asserts that the C-47 was manufactured

13

"for the United States Armed Forces under the direct supervision, control, order, and directive of federal government officers acting under the color of federal office," (App. at 39), and that that control extended to "the content of written materials and warnings associated with such aircraft," (*id*. at 41). Those alleged facts alone satisfy the "for or relating to" requirement, as they demonstrate a direct connection or association between the federal government and the failure to warn described by Papp. As a result, Boeing has satisfied the third requirement of § 1442(a)(1).

### 4. *Boeing raises a colorable federal defense*

The fourth and final requirement to demonstrate removal jurisdiction under § 1442(a)(1) is that the defendant raise a "colorable federal defense." *Defender Ass'n*, 790 F.3d at 467. Boeing asserted in its notice of removal that it was entitled to the "military contractor defense" announced in *Boyle v. United Techs. Corp.*, 487 U.S. 500 (1988). Under *Boyle*, a federal contractor cannot be held liable for a state tort if, in the context of the work at issue, "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Id.* at 512. Because Papp's claim against Boeing is predicated on a failure-to-warn theory, the *Boyle* test could be rephrased to cover Boeing's actions as follows: (1) the government approved specifications for the C-47, including certain warnings for the plane; (2) Boeing provided the warnings required by the government; and (3) Boeing told the government about any asbestos hazards that were then

14

known to it but not to the government. *See Leite*, 749 F.3d at 1123 (noting that the government contractor defense is established by the defendant showing that "(1) the [government] exercised its discretion and approved certain warnings for [the defendant]'s products, (2) [the defendant] provided the warnings required by the [government], and (3) [the defendant] warned the [government] about any asbestos hazards that were known to [the defendant] but not to the [government]").[6]

Taking the undisputed facts from the notice of removal, including the Fogg Declaration, as true, Boeing has stated sufficient facts to make out a colorable defense. As to the first element of the *Boyle* test, Boeing asserted that the government exercised complete control over "any markings or labels on [Boeing] aircraft or aircraft components," that in-

---

[6] We are not alone in permitting defendants to raise the government contractor defense from *Boyle* in failure-to-warn cases; the Second, Fourth, Fifth, Sixth, Seventh, Ninth, and Eleventh Circuits have all allowed the defense in such cases. *See In re Joint E. & S. Dist. N.Y. Asbestos Litig.*, 897 F.2d 626, 629-30 (2d Cir. 1990); *Ripley v. Foster Wheeler LLC*, __ F.3d __, No. 15-1918, 2016 WL 6441049, at *2 (4th Cir. Nov. 1, 2016); *Perez v. Lockheed Corp. (In re Air Disaster at Ramstein Air Base, Germany, on 8/29/90)*, 81 F.3d 570, 576 (5th Cir.), *modified on other grounds*, 88 F.3d 340 (5th Cir. 1996) (per curiam); *Tate v. Boeing Helicopters (Tate II)*, 140 F.3d 654, 656 (6th Cir. 1998); *Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 1003-04 (7th Cir. 1996); *Snell v. Bell Helicopter Textron, Inc.*, 107 F.3d 744, 749-50 (9th Cir. 1997); *Dorse v. Eagle–Picher Indus., Inc.*, 898 F.2d 1487, 1489 (11th Cir. 1990).

15

person meetings occurred between Boeing and government personnel where warnings were discussed, and that "[t]he contents, including any warnings, of any technical manuals… were directed, reviewed, and approved by" the government. (Opening Br. at 19-20.)

As to the second element, Boeing's notice of removal and the attached Fogg Declaration are explicit that Boeing followed every specification set forth by the government when building the C-47 aircraft.

Finally, as to the third element, the Fogg Declaration states that, at the time the C-47 aircraft was being built, Boeing was not aware of the health hazards of asbestos. Furthermore, some of the documents produced by Boeing suggest that the government had a superior understanding of the risks of asbestos.[7] Because we are bound to accept Boeing's assertion that the risks were not known to it, Boeing did not have any superior knowledge that it withheld from the government.

The District Court took issue with several points in the Fogg Declaration, in particular Fogg's assertion that the government had oversight of the warnings related to the aircraft. The Court seemed especially troubled that Fogg did not provide thorough citations to the documents delivered with his declaration. Given the posture of the case though, that objection is misplaced. A defendant "need not win his case before he can have it removed." *Willingham*, 395 U.S. at 407. At the removal stage, Boeing needed only show that its

---

[7] Examples of that may be found in bulletins, pamphlets, and technical manuals provided in the record.

16

asserted *Boyle* defense was "colorable," which is to say that the defense was "legitimate and [could] reasonably be asserted, given the facts presented and the current law." *Colorable Claim*, BLACK'S LAW DICTIONARY (10th ed. 2014); *see also Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 782-83 (E.D. Pa. 2010) ("[A] defense is colorable for purposes of determining jurisdiction under Section 1442(a)(1) if the defendant asserting it identifies facts which, viewed in the light most favorable to the defendant, would establish a complete defense at trial."). It has done so and, not insignificantly, the facts presented were not contested in the District Court. If Boeing is able to prove at trial by a preponderance of the evidence the facts alleged in its notice of removal, including the facts asserted in the Fogg Declaration, it will have established a *prima facie* defense under *Boyle* and may prevail on the merits. That is sufficient to constitute a "colorable" federal defense. Boeing's notice of removal thus met the fourth and final requirement of § 1442(a)(1).

Having satisfied all of § 1442(a)(1)'s requirements, Boeing established its entitlement to proceed in federal court, but Papp makes one further statement to forestall that result.

## B. TIMELINESS

In addition to challenging the merits of Boeing's removal argument, Papp asserts, in the alternative, that Boeing did not timely seek removal. That assertion, made in a footnote, reads as follows:

> Because the Court below determined that remand was jurisdictionally required under the

17

> second grounds, it did not deem it necessary to address the timeliness issue. However, since the issue of jurisdiction[8] is de novo before this Court, should [the District Court's] stated rationale for remand not be accepted, it is respectfully submitted that the issue of timeliness, which was fully briefed by both parties below, would be an appropriate subject for consideration.

(Ans. Br. at 5 n.4 (internal citations to the record omitted).) It is well established that "[f]ederal courts of appeals refuse to take cognizance of arguments that are made in passing without proper development." *Johnson v. Williams*, __ U.S. __, 133 S. Ct. 1088, 1095 (2013); *see also Reynolds v. Wagner*, 128 F.3d 166, 178 (3d Cir. 1997) ("[A]n argument consisting of no more than a conclusory assertion … will be deemed waived."). The footnote, standing alone, does not sufficiently present Papp's argument on the issue of timeliness. Indeed, it is not even phrased as an argument, but rather simply states that the issue would be "appropriate for consideration." (Ans. Br. at 5 n.4.) The only sense in which Papp makes an argument at all is by reference to what he said somewhere else, trying to incorporate arguments he made before the District Court. To permit parties to present arguments in that fashion would effectively nullify the page

---

[8] Though not necessary to the resolution of this issue, it bears mention that timeliness of removal under the federal officer removal statute is not, in fact, a jurisdictional issue. *See Farina v. Nokia Inc.,* 625 F.3d 97, 114 (3d Cir. 2010) ("It is well settled that § 1446(b)'s thirty-day time limit for removal is a procedural provision, not a jurisdictional one.").

18

or word limits imposed by the appellate and local rules. *See Gaines-Tabb v. ICI Explosives, USA, Inc.,* 160 F.3d 613, 623-24 (10th Cir. 1998) ("Allowing litigants to adopt district court filings would provide an effective means of circumventing the page limitations on briefs set forth in the appellate rules …."). That cannot be permitted, and we join our fellow Circuits in declining to do so. *See id.* (collecting cases).[9] Papp has therefore forfeited any argument as to timeliness.[10]

---

[9] As noted by the Tenth Circuit in *Gaines-Tabb*, the First, Fourth, Fifth, Seventh, and Eighth Circuits have already endorsed this rule. 160 F.3d at 623-24. Since the time that *Gaines-Tabb* was decided, the rule has also been adopted by the Second, *Frank v. United States*, 78 F.3d 815, 833 (2d Cir. 1996), *vacated on other grounds*, 521 U.S. 1114 (1997); and Sixth Circuits, *Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 453 (6th Cir. 2003). *Cf. Sandgathe v. Maass*, 314 F.3d 371, 380 n.8 (9th Cir. 2002) (admonishing counsel for incorporating arguments by reference, but rejecting those arguments on the merits).

[10] Even were that issue preserved, it would not change our conclusion on the matter. Papp's principal argument relies on the notion that Boeing's removal was untimely because it came 45 days after the filing of the Complaint, outside of the 30 day window provided by the statute. The statute also provides, however, that, "if the case stated by the initial pleading is not removable" the notice of removal may be filed within 30 days following receipt of "an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3). Here, Boeing asserts that it was not aware that Papp was making a claim related to

## III. CONCLUSION

For the foregoing reasons, we will reverse.

---

Boeing's role as a federal contractor until the deposition of Mary Papp, during which Boeing learned for the first time that the allegations against it related to its production of the C-47 aircraft.

Papp concedes that answers to deposition questions "can constitute 'other paper' for purposes of triggering the time for removal under 28 U.S.C. § 1446(b)." (App. at 120). He argues, however, that Boeing should have been able to ascertain from its own records what specific aircraft Keck was working on based on Keck's place and timing of employment, and therefore determine whether there was a federal defense available. Setting aside the fact that nothing in the record supports the assertion that Boeing could have made such a deduction, Boeing simply was not required to do so. *See In re Asbestos Prod. Liab. Litig.* (*No. VI*), 770 F. Supp. 2d 736, 740 (E.D. Pa. 2011) (citing *Foster v. Mutual Fire Marine & Inland Ins. Co.*, 986 F.2d 48, 53 (3d Cir.1993), *rev'd on other grounds*, *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (1999) (noting that we look only to the "four corners of the pleading" to see if it "informs the reader, to a substantial degree of specificity, that all elements of federal jurisdiction are present," and ask "not what the defendant knew, but what the relevant document said.")). As a result, the relevant date for determining the timeliness of Boeing's motion to remove was the September 5, 2013 deposition of Mary Papp, and Boeing's October 4, 2013 filing was therefore timely.