NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 18-1397

_____

LEONARD CESSNA,
on behalf of himself and all others
similarly situated; GEORGE WORK,
on behalf of himself and all others
similarly situated,

Appellants

v.

REA ENERGY COOPERATIVE, INC.

_____

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 3-16-cv-00042)
District Judge: Honorable Kim R. Gibson

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
September 24, 2018

Before: AMBRO, CHAGARES, and GREENAWAY, JR., <u>Circuit Judges</u>

(Opinion filed: October 15, 2018)

_____

OPINION[*]

_____

AMBRO, <u>Circuit Judge</u>

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

Leonard Cessna and George Work brought a class action in Pennsylvania state court against their non-profit electrical utility, REA Energy Cooperative, Inc. It provides private electrical service to its approximately 22,000 members in rural western Pennsylvania. Under REA's bylaws—part of the contract that governs the relationship between it and its members—its members each own an interest in the cooperative called "Patronage Capital" (also called "capital credits"). The amount they own is determined by their electrical usage. The bylaws provide that member payments to REA for electrical usage are "furnished . . . as capital," which are credited to each member account and "shall have the same status as though they had been paid to the [member] in cash in pursuance of a legal obligation to do so and the [member] had then furnished the Cooperative corresponding amounts for capital." (JAV. II at 103 & 147.) The bylaws also provide that "[i]f" REA's Board of Directors "shall determine that the financial condition of the Cooperative shall not be impaired thereby, the capital then credited to [members'] accounts may be returned in full or in part." (JAV. II at 103–04 & 148.)

According to Cessna and Work's complaint, from REA's founding in 1937 through 2011, it retained all of its members' Patronage Capital, which today is worth $56 million. In 2011, it retired $700,000 for members who used the cooperative in the years preceding 1961, though it could not locate 6000 of those members to complete their payment. It has never retired Patronage Capital for any year following 1961, and it has made no payments to its members either before or since 2011.

Cessna has been a member of REA since 1981, and Work was a member from 1961 to 2011. They claim that, by retaining all the members' Patronage Capital for years

2

at a time and failing to pay its members with any regularity, REA has violated its bylaws, which incorporate 15 Pa.C.S. § 7330. The statute requires Pennsylvania electrical cooperatives to "return[], from time to time, to the members" revenues not required for operating expenses, loan payments, new projects, or other contingencies. *Id.* § 7330(b)-(c).

REA removed the case to federal court on the basis of the federal officer removal statute, 28 U.S.C. § 1442(a)(1). Cessna and Work moved the District Court to remand, but it denied their motion. REA then moved to dismiss the suit, which the Court granted. It held, among other things, that the complaint failed to state a breach-of-contract claim.[1] The Court granted leave to amend the complaint. After the deadline for amendment had passed, Cessna and Work moved for either an extension or for reconsideration of the dismissal. The Court denied their motion. They now appeal the Court's interpretation of the federal officer removal statute and its dismissal of their contract claims. We review both questions *de novo*. *See Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 810 (3d Cir. 2016) (removal); *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 230 (3d Cir. 2008) (motion to dismiss). Because we find no error in the District Court's reasoning, we affirm.

## I.  The Motion to Remand

The District Court had jurisdiction over this action under the federal officer removal statute, 28 U.S.C. § 1442(a)(1). It provides that a defendant may remove a civil suit brought in state court "to the district court of the United States for the district and

---

[1] Cessna and Work brought several other claims against REA that were also dismissed, but they do not appeal those rulings.

division embracing the place wherein it is pending" if the defendant is "[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office . . . ."

It is well established that this language is to be liberally construed in favor of the federal forum. *Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 147 (2007); *In re Commonwealth's Motion to Appoint Counsel Against or Directed to Def. Ass'n of Phila.*, 790 F.3d 457, 466-67 (3d Cir. 2015).

> We have held that to properly remove, a defendant must show:
>
> (1) [it] is a "person" within the meaning of the statute; (2) the [plaintiff's] claims are based upon the [defendant's] conduct "acting under" the United States, its agencies, or its officers; (3) the [plaintiff's] claims against [the defendant] are "for, or relating to[,]" an act under color of federal office; and (4) [the defendant] raises a colorable federal defense to the [plaintiff's] claims.

*Papp*, 842 F.3d at 812 (quoting *In re Commonwealth's Motion*, 790 F.3d at 467). Cessna and Work concede that REA is a "person" but challenge whether it has met its burden as to the other three elements.

First, we agree with the District Court's conclusion that REA was "acting under" federal office. "'[A]cting under' must involve an effort to *assist*, or to help *carry out*, the duties or tasks of [a] federal superior." *In re Commonwealth's Motion*, 790 F.3d at 468 (quoting *Watson*, 551 U.S. at 152 (emphasis in original)). Although REA's mere compliance with a complex regulatory scheme would not suffice, *Watson*, 551 U.S. at 153, the relationship between REA and the federal Government is more significant. REA's existence and continued operation implement a long-running federal program.

4

President Franklin D. Roosevelt sought to promote rural electrification as early as 1935, and in the following year Congress enacted legislation permitting federal loans to non-profit electrical cooperatives in rural or sparsely populated areas. *See Caver v. Cent. Ala. Elec. Coop.*, 845 F.3d 1135, 1138 (11th Cir. 2017) (describing the Rural Electrification Act of 1936, 7 U.S.C. § 901, *et seq.*). Those loans are now overseen by the Rural Utilities Services of the United States Department of Agriculture ("RUS"). *Id.* at 1139. REA was created with funding under the Rural Electrification Act. In addition to being heavily regulated by federal law, its activity is circumscribed by the terms of its loan agreement with RUS. As our sister circuits have observed, "rural electric cooperatives [like REA] are something more than public utilities; they are instrumentalities of the United States." *Ala. Power Co. v. Ala. Elec. Coop., Inc.*, 394 F.2d 672, 677 (5th Cir. 1968); *accord Fuchs v. Rural Elec. Convenience Coop. Inc.*, 858 F.2d 1210, 1217 (7th Cir. 1988) ("[R]ural electric cooperatives are in some sense 'instrumentalities of the United States.'" (quoting *Ala. Power Co.*, 394 F.2d at 677)); *see also Caver*, 845 F.3d at 1143 (holding a rural cooperative similar to REA "assist[s] RUS with accomplishing its duties or tasks"). Therefore REA acted under federal office.

Second, we agree with the District Court that Cessna and Work's claims "relate to" an act of REA under color of federal office. In other words, there is some "'connection' or 'association' between the act in question and the federal office," as our precedent requires. *In re Commonwealth's Motion*, 790 F.3d at 471. Cessna and Work challenge REA's withholding of Patronage Capital. In response, the utility points to terms in its loan agreement with RUS and 7 C.F.R. § 1717.617, both of which limit its

5

authority to distribute Patronage Capital to its members without prior RUS approval. REA claims it withheld Patronage Capital to comply with these limitations.

In response, Cessna and Work argue nothing outright prohibits Patronage Capital distributions and REA could have paid at least some amount to its members without violating any legal obligation. Thus they contend REA's particular manner of withholding member funds is not related to any act under color of federal office. But "[t]o choose between" these competing interpretations of the loan agreement and the law "is to decide the merits of this case," which "would defeat the purpose of the removal statute." *Jefferson Cty. v. Acker*, 527 U.S. 423, 432 (1999) (interpreting an earlier and narrower version of the removal statute).[2] REA does not need to prove its understanding of its legal obligations is correct; it needs only to show the acts for which it is being sued share a connection to acts under color of federal office. That it has done.

Third, and for similar reasons, REA also has a colorable federal defense that warrants review in a federal forum. It maintains that any asserted obligation to pay out Patronage Capital under 15 Pa.C.S. § 7330 is preempted because this conflicts with federal regulations and REA's loan agreement with RUS. Again, Cessna and Work respond that the state law does not conflict—or if it does to some degree, it would not fully preclude REA from retiring any Patronage Capital. But regardless whether it ultimately prevails on the merits, REA's preemption argument is colorable. "[O]ne of the

---

[2] Cessna and Work assert that, because they are bringing a factual rather than facial challenge to federal jurisdiction, the District Court should have determined which interpretation of REA's Patronage Capital obligations is correct. However, as we have made clear in other federal officer removal cases, "[t]o the extent that [a factual] challenge bleeds into the merits of the case, the District Court ought not address it in terms of jurisdiction." *Papp*, 842 F.3d at 811 n.4.

most important reasons for removal is to have the validity of the defense of official immunity tried in a federal court;" for this reason "we have rejected a narrow, grudging" approach when analyzing whether a defendant had raised a colorable federal defense. *Jefferson Cty.*, 527 U.S. at 431 (internal quotation marks omitted).

REA established all the elements necessary for removal under 28 U.S.C. § 1442(a)(1). Thus the District Court did not err in denying Cessna and Work's motion to remand this action to Pennsylvania state court.

## II. The Motion to Dismiss

The District Court also correctly granted REA's motion to dismiss for Cessna and Work's failure to state a claim for breach of contract. Such a claim requires a plaintiff to plead (1) the existence of a contract (including its essential terms), (2) a breach of the contract, and (3) damages. *Omicron Sys., Inc. v. Weiner*, 860 A.2d 554, 564 (Pa. Super. Ct. 2004). Both parties agree that the bylaws establish the existence of a contract and that Cessna and Work allege money damages. As for element two, we are not persuaded of any breach. They argue REA breached the contract by failing to distribute Patronage Capital. However, the bylaws read in pertinent part: "If, at any time prior to dissolution or liquidation, the Board of Directors shall determine that the financial condition of the Cooperative shall not be impaired thereby, the capital then credited to [members'] accounts *may* be returned in full or in part." (JAV. II at 147) (emphasis added). Because this provision is plainly permissive, there is no claim for breach of contract.

Cessna and Work further argue that the District Court erred when it failed to read the covenants of good faith and fair dealing into REA's bylaws. Although good faith and

7

fair dealing may be used as a tool to interpret a contract, it "cannot be used to override an express contractual term." *Northview Motors, Inc. v. Chrysler Motors Corp.*, 227 F.3d 78, 91 (3d Cir. 2000). Here, the plain language of the bylaws addressed both Patronage Capital and the relief sought by Cessna and Work. Thus the District Court did not err in granting REA's motion to dismiss.[3]

Thus we affirm.

---

[3] Cessna and Work also argue breach of contract under 15 Pa. Cons. Stat. Ann. § 7330(c). We agree for the same reasons articulated by the District Court that there is no breach on that basis.