**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-1753
_____

ATTORNEY GENERAL OF THE STATE OF NEW
JERSEY; NEW JERSEY DEPARTMENT OF
ENVIRONMENTAL PROTECTION; THE
COMMISSIONER OF THE NEW JERSEY DEPARTMENT
OF ENVIRONMENTAL PROTECTION; THE
ADMINISTRATOR OF THE NEW JERSEY SPILL
COMPENSATION FUND; ACTING DIRECTOR NEW
JERSEY DIVISION OF CONSUMER AFFAIRS

v.

THE DOW CHEMICAL COMPANY; LEGACY VULCAN
LLC, formerly known as Vulcan Materials Company;
VIBRANTZ CORPORATION, formerly known as Ferro
Corporation; ABC CORPORATIONS 1-10, Names
Fictitious,
                                                          Appellants
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 3:23-cv-02449)
District Judge: Honorable Robert Kirsch
_____

Argued April 15, 2025

Before: RESTREPO, MONTGOMERY-REEVES, and
SCIRICA, *Circuit Judges*.

(Opinion filed: June 11, 2025)

Mary Rose Alexander
Latham & Watkins
330 N Wabash Avenue

Suite 2800
Chicago, IL 60611

Elliot M. Davis
Shook Hardy & Bacon
One Rockefeller Plaza
Suite 2801
New York, NY 10020

Kasdin M. Mitchell **[ARGUED]**
Kirkland & Ellis
1301 Pennsylvania Avenue NW
Washington, DC 20004

    *Counsel for Appellant The Dow Chemical Company*

Matthew R. Conley
Archer & Greiner
1025 Laurel Oak Road
Voorhees, NJ 08043

Felice B. Galant
Norton Rose Fulbright
1301 Avenue of the Americas
New York, NY 10019

*Counsel for Appellant Legacy Vulcan LLC, formerly known as*
*Vulcan Materials Company*

Eric K. Blumenfeld
Hughes Hubbard & Reed
One Battery Park Plaza
New York, NY 10004

*Counsel for Appellant Vibrantz Corporation, formerly known*
*as Ferro Corporation*

Katie R. Beran
Timothy L. Kelly
Renner K. Walker **[ARGUED]**
Hausfeld
325 Chestnut Street
Suite 900

Philadelphia, PA 19106

Matthew K. Edling
Quentin C. Karpilow
Sher Edling
100 Montgomery Street
Suite 1410
San Francisco, CA 94104

Dianna E. Shinn
Office of Attorney General of New Jersey
Division of Law
25 Market Street
Hughes Justice Complex
Trenton, NJ 08625

*Counsel for Appellees Attorney General of the State of New Jersey; New Jersey Department of Environmental Protection; Commissioner of the New Jersey Department of Environmental Protection; Administrator of the New Jersey Spill Compensation Fund; & Acting Director New Jersey Division of Consumer Affairs*

_____

OPINION OF THE COURT
_____

MONTGOMERY-REEVES, *Circuit Judge*.

The State of New Jersey sued the Dow Chemical Company ("Dow")[1] in state court for the design, manufacture, marketing, and sale of 1,4-dioxane, an alleged "highly toxic substance and a likely human carcinogen." App. 128. Dow inhibited 1,1,1-trichloroethane ("TCA") with 1,4-dioxane to create a cleaning agent that would dissolve oil and grease from

---

[1] New Jersey also sued Legacy Vulcan LLC and Vibrantz Corporation. Both consented to removal and joined Dow's briefing but are otherwise not pertinent to this appeal.

3

metal without corrosion.  New Jersey alleges that Dow's 1,4-dioxane products substantially harmed the environment.

But this appeal is not about the merits of the underlying lawsuit.  It is about where the lawsuit should be heard.  New Jersey prefers to proceed in state court.  Dow contends that this litigation must be tried in federal court under the federal-officer removal statute because it acted under the United States Government and Military (collectively the "Government") in designing and producing 1,4 dioxane inhibited TCA.

The District Court disagreed with Dow, and so do we. Nothing in the record establishes that Dow was acting under the Government with respect to 1,4-dioxane inhibited TCA.  So Dow cannot litigate this case in federal court under the federal-officer removal statute, 28 U.S.C. § 1442(a)(1). Thus, we will affirm the District Court's order remanding this case to state court.

## I.    BACKGROUND[2]

Dow designed, sold, and improved 1,4-dioxane inhibited TCA products beginning in 1951 and continuing through the 1960s.  In 1951, Dow began selling a product named Chlorothene for use in cold cleaning.  Dow then worked

---

[2] "Because a motion to remand shares an essentially identical procedural posture with a challenge to subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), it is properly evaluated using the same analytical approach." *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 811 (3d Cir. 2016) (first citing *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014); and then citing *In re Commonwealth's Motion to Appoint Couns. Against or Directed to Def. Ass'n of Phila.*, 790 F.3d 457, 466 (3d Cir. 2015)).  Because New Jersey challenges Dow's notice of removal "without disputing the facts alleged," we "consider the allegations . . . as true." *Id.* (alteration in original) (quoting *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016)).  And when a dispute requires us to choose between competing factual accounts, we must "credit [Dow's] theory of the case . . . ." *Jefferson Cnty. v. Acker*, 527 U.S. 423, 432 (1999).

to improve the product's stability for use in vapor degreasing. In 1960, Dow released an updated product named Chlorothene NU. From 1961 to 1962, Dow evaluated Chlorothene NU as a specialty vapor degreasing agent, and its use for that purpose grew steadily.

In July 1966, a sea change occurred in the vapor degreasing market—Los Angeles County effectively banned the use of TCE, a similar (but more popular) compound to TCA. This became known as "Rule 66." The next month, Dow began selling an updated 1,4-dioxane inhibited TCA product within Los Angeles County that had achieved stability for general use in vapor degreasing. Los Angeles County "widely accepted" the product, known as Dow Solvent SA-1192A. App. 250.

In 1967, the Government began working with industry members, including Dow, to revise and amend military and federal specifications (also known as product specifications) for vapor degreasing agents.[3] After testing confirmed inhibited TCA's utility for vapor degreasing in place of TCE, Dow and industry members submitted proposed product specifications that the Government adopted with "minor modifications." App. 499.[4] When the Government issued the product specifications, Dow began selling the solvent first sold in Los Angeles County after Rule 66 on a nationwide basis under the name Chlorothene VG. Dow sold Chlorothene VG to the public and to the Government.

Decades later, when New Jersey sued Dow for the design and use of 1,4-dioxane in products like Chlorothene VG following its alleged impact on the environment, Dow removed the case to federal court under the federal-officer removal

---

[3] Product specifications outline technical requirements that suppliers must meet before the Government will procure a product.

[4] The product specifications did not require manufacturers to inhibit TCA with 1,4-dioxane. And the product specifications allowed bids or proposals from any company for the sale of inhibited TCA to the Government.

statute, 28 U.S.C. § 1442(a)(1). The District Court remanded the case because Dow was not acting under the Government with respect to its production and sale of products containing 1,4-dioxane, explaining that Dow produced and sold 1,4-dioxane inhibited TCA "independently and before the implementation of the federal regulations on which it relies." App. 13. While Dow contended it produced 1,4-dioxane-inhibited TCA for the Government's benefit and according to the Government's product specifications, the District Court reasoned that this demonstrated nothing other than a normal commercial or regulatory relationship, insufficient for federal-officer removal. Dow appealed.

## II.   JURISDICTION AND STANDARD OF REVIEW

"We have jurisdiction to review the District Court's order to remand pursuant to 28 U.S.C. §§ 1291 and 1447(d)." *Papp*, 842 F.3d at 810 n.3. And we review de novo the District Court's order to remand for lack of subject-matter jurisdiction under 28 U.S.C. § 1442(a)(1). *Id.* at 810 (citing *Def. Ass'n*, 790 F.3d at 465).

## III.   DISCUSSION

We apply a four-part test to determine whether Dow may remove a case under the federal-officer removal statute: (1) Dow must be considered a "person"; (2) New Jersey's claims against Dow must center on its conduct when "acting under" the Government; (3) New Jersey's claims against Dow must be "for, or relating to" an act under color of federal office; and (4) Dow must raise a colorable federal defense. *Def. Ass'n*, 790 F.3d at 467 (quoting 28 U.S.C. § 1442(a)(1)) (citing *Ruppel v. CBS Corp.*, 701 F.3d 1176, 1180–81 (7th Cir. 2012)).

In this appeal, Dow contends that the District Court erred by remanding the case for failure to satisfy the latter three requirements for federal-officer removal.[5] As to the "acting under" prong, Dow argues that it "'produc[ed] an item the government needed'—specification-compliant TCA—which

---

[5] No one disputes that Dow is a "person" for purposes of federal-officer removal.

'the government otherwise would have been forced to produce on its own.'" Opening Br. 26 (quoting *Papp*, 842 F.3d at 813). Thus, according to Dow, New Jersey's claims fall within the purview of the federal-officer removal statute.

We disagree. And we begin and end with the "acting under" requirement because that analysis resolves the appeal. *See Mohr v. Trs. of Univ. of Pa.*, 93 F.4th 100, 104 n.2 (3d Cir. 2024) (concluding analysis after "acting under" requirement because without it federal-officer removal fails).

The Supreme Court explained the contours of the "acting under" prong of federal-officer removal in *Watson v. Philip Morris Cos.*, 551 U.S. 142 (2007). In *Watson*, the Supreme Court rejected Philip Morris's attempt to remove a lawsuit based on its cigarette design. *Id.* at 147, 157. In particular, the Supreme Court rejected Philip Morris's argument that it "acted under" the Federal Trade Commission because of the agency's extensive monitoring and regulation of cigarettes. *Id.* at 146.

The Supreme Court explained that the language of "acting under" is "broad" and thus should be "liberally construed." *Id.* at 147 (quoting *Colorado v. Symes*, 286 U.S. 510, 517 (1932)). "But broad language is not limitless." *Id.* And, in analyzing the metes and bounds of the phrase "acting under," the Supreme Court explained that it requires "an effort to *assist,* or to help *carry out,* the duties or tasks of the federal superior." *Id.* at 152. Crucially, "help or assistance . . . does *not* include simply *complying* with the law." *Id.* "[T]hat is so even if the regulation [or law] is highly detailed and even if the private firm's activities are highly supervised and monitored." *Id.* at 153. To hold otherwise would risk "potentially bringing within its scope state-court actions filed against private firms in many highly regulated industries." *Id.* Moreover, as the term "under" in "acting under" implies, the relationship between the private party and Government "typically involves 'subjection, guidance or control,'" which does not exist simply because something is highly regulated. *Id.* at 151. (quoting Webster's New International Dictionary 2765 (2d ed. 1953)).

Finally, the Supreme Court rejected Philip Morris's attempt to analogize government contractors with companies

7

selling highly regulated products. The Supreme Court explained that federal-officer removal involving government contractors differs because a contractor helps "the Government to produce an item that it needs" and thus privatizes a task "the Government itself would have had to perform." *Id.* at 153–54. As an example of this principle in application, the Supreme Court cited *Winters v. Diamond Shamrock Chemical Co.*, 149 F.3d 387 (5th Cir. 1998) (subsequent history omitted).

In *Winters*, the Fifth Circuit held that Dow (and others) acted under the Government when producing Agent Orange during the Vietnam War. *See id.* at 398–400. This followed evidence that the Government "compelled" Dow to make Agent Orange "under threat of criminal sanctions"; "maintained strict control over the development and subsequent production of Agent Orange"; and required "on-going supervision" over all facets of Agent Orange's production. *Id.* at 398, 399, 400. Moreover, while Dow sold herbicides commercially before the manufacture of Agent Orange, the Government required "unprecedented quantities" of the active herbicidal ingredients "without dilution," differing from the commercially available product. *Id.* at 399. Based on this evidence, the Fifth Circuit concluded that Dow and others acted under "federal direction" in Agent Orange's production. *Id.* at 400.

In recent years, following *Watson*, our Court has on five occasions analyzed whether private parties were "acting under" the Government for purposes of federal-officer removal. On one end of the spectrum, we held in *Defender Ass'n* and *Papp* that private parties satisfied the "acting under" prong.

In *Defender Ass'n*, the Commonwealth of Pennsylvania sued to disqualify the Federal Community Defender from representing clients in state post-conviction proceedings for improper use of federal grant funds. 790 F.3d at 461, 468–70. We explained that the Federal Community Defender was acting under the Government because: (1) it is a non-profit entity created by the Criminal Justice Act ("CJA"); (2) it is delegated authority by federal statutes—the CJA and 18 U.S.C. § 3599; (3) it assists the Administrative Office of the U.S. Courts ("AO") to *carry out* the duties or tasks of a federal

superior; and (4) it maintains detailed financial records and submits an annual report of its activities to the AO. *Id.* at 469 (internal citations omitted). We held that these activities, coupled with the inquiry being "directed at the relationship between the Federal Community Defender and the AO," satisfied the "acting under" prong. *Id.* at 470.

In *Papp*, an employee's spouse sued Boeing for asbestos exposure relating to the employee's work on World War II C-47 cargo planes for the U.S. Military. 842 F.3d at 809–10. The lawsuit was an "archetypal case" for permissible federal-officer removal because Boeing acted on "the direction of a federal officer" pursuant to a "federal contract" to produce a military cargo plane, something "the government otherwise would have been forced to produce on its own." *Id.* at 813; *see also id.* at 810 (explaining that Boeing produced the World War II planes "under the specific supervision of the United States military" and "government[ ] oversight extended to labels and warnings for all parts of the aircraft"). Thus, the "acting under" prong was "easily" satisfied in *Papp. Id.* at 813.

But the "acting under" prong of federal-officer removal is not always satisfied, and on three occasions we policed the statute's outer limits.

First, in *Maglioli*, we considered federal-officer removal as applied to nursing homes sued for COVID-19-related wrongful death claims. *Maglioli v. All. HC Holdings LLC*, 16 F.4th 393, 400, 404–06 (3d Cir. 2021). The nursing homes pointed to compliance with Centers for Medicare & Medicaid Services ("CMS") and Centers for Disease Control and Prevention ("CDC") publications and regulations to satisfy the "acting under" prong. *Id.* at 405. We disagreed. We noted that the nursing homes "are not government contractors" and "do not have [a] close relationship with the federal government." *Id.* And we made clear that complying with federal regulations does not "deputize all . . . private-sector workers as federal officers," as any holding to the contrary would bring "doctors, weather forecasters, clergy, farmers, bus

9

drivers, plumbers, dry cleaners," and others within the purview of federal-officer removal. *Id.* at 406.

Second, in *Chevron*, we considered federal-officer removal as applied to oil companies facing climate-change lawsuits. *City of Hoboken v. Chevron Corp.*, 45 F.4th 699, 706, 712–13 (3d Cir. 2022). The oil companies cited drilling leases granted by the Government. *Id.* at 712. That was insufficient. And we held that federal-officer removal is unavailable based on a company's compliance with "run-of-the-mill regulations" to "sell [a product] on the open market" where no other "close federal control" exists. *Id.* at 713.

Third, in *Mohr*, we considered federal-officer removal as applied to a lawsuit against the University of Pennsylvania ("Penn") for alleged violations of privacy law on its hospital's online patient portal. 93 F.4th at 103–06. Penn, which had a government contract, argued that incentive payments from CMS that Penn received in exchange for operating the online patient portal showed that it was "acting under" the U.S. government. *Id.* at 105–06. But this, too, was not enough. We rejected Penn's argument because it was not "doing the government's business" when it operated a patient portal in exchange for federal incentives; it was "doing its own." *Id.* at 105 (citing *Doe v. BJB Health Sys.*, 89 F.4th 1037, 1043 (8th Cir. 2023)).

Taken together, *Winters*, *Defender Ass'n*, and *Papp* permit federal-officer removal when a private party assists or carries out the Government's duties or tasks under a contract or federal law; the Government directs, guides, or controls the private party; and the lawsuit is directed at the close relationship between the two. But *Maglioli* reinforces the notion established in *Watson* that a purely regulatory relationship is insufficient to establish federal-officer removal. And *Chevron* and *Mohr* explain that economic benefits from complying with government regulations likewise are insufficient to satisfy the "acting under" prong.

Those principles resolve this case. Dow's case rests and falls on the fact that the Government purchased a product Dow made. But that fact is immaterial when Dow did not produce the product under the Government's watch. Even more, Dow

10

created and sold 1,4-dioxane inhibited TCA more than a decade before the product specifications issued. And when Rule 66 effectively banned TCE, Dow quickly introduced a new 1,4-dioxane inhibited TCA product to Los Angeles County and then crafted product specifications for the Government to adopt. True, Dow sold Chlorothene VG to the Government, a product Dow contends it tailored for the product specifications and that differed from the earlier versions of 1,4-dioxane inhibited TCA that Dow first introduced in 1951. But nothing required Dow to create and sell a product to the Government. And the Government never guided or controlled Dow's production of inhibited TCA. As a result, Dow cannot satisfy the "acting under" prong of federal-officer removal.

*     *     *     *     *

Providing a product to the Government does not guarantee federal-officer removal. At times, a case may be removed, like when Dow was "acting under" the Government when it was coerced to produce Agent Orange in *Winters*. And Boeing was "acting under" the Government when a lawsuit targeted its production of a highly tailored military plane under the Government's watch in *Papp*. But providing a good or service that the Government needs is not an independently sufficient premise to establish federal-officer removal. So here, with no indicia of "close federal control" or a close relationship, Dow's product-specification-compliant sales to the Government are insufficient. *Chevron*, 45 F.4th at 713. Thus, we will affirm the District Court's order remanding this case to New Jersey state court because the federal-officer removal statute is inapplicable.

## IV.    CONCLUSION

For these reasons, we will affirm the judgment of the District Court.

11