

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-7-2008

# Chin v. DaimlerChrysler Corp

Precedential or Non-Precedential: Precedential

Docket No. 07-2760

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Chin v. DaimlerChrysler Corp" (2008). *2008 Decisions*. Paper 595.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/595

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**Precedential**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

————

No. 07-2760

————

DAVID CHIN; KEVIN L. SULLIVAN; MARVIN
KIRSCHENBAUM; BRUCE MCCUTCHEON; DEBRA
DODGE; KEVIN L. DODGE; HOWARD BARKAN; BESSIE
COYNE; GEORGE HIGGINS; JULIE SZABOS; JIM
COFFEY; CLAUDE MEYER; SUSAN ROBINS; AL
ZEIDLER; FRAN STRYKOWSKI; JEFF BRADLEY; JERRY
GREEN; TONY SANCHEZ; KENNETH E. NEALY; CRAIG
M. DINSMORE; DAVID P. YEXLEY; ED MIKOLOAJCZYK;
MARTHA SINGLETON; CALVIN M. SINGLETON;
HOWARD G. SAUL; SCOTT A. HOLLENBECK; BERNARD
SIMELTON; WILLIAM KNUEVEN; GARY BERNER; JOHN
D. JAMES; MARY M. GAAR; DAVE ANDREWS; DENNIS
BEAM; CAROLYN A. BUTLER; GREG CARPS; CHRIS
CLARKSON; CYNTHIA COOPER; BYRCE CUSTODIO;
SGT. CHRISTOPHER B. DYE; KAREN ELLIOTT; KAREN
FALLIS; KIMBERLY S. FISH; DARLENE FLUKER; STEVE
FOLEY; WILLIAM FOWLER;J.V. FRANCK; THOMAS E.
GARDNER; RAYMOND C. GOMEZ; BENJAMIN M.
GOSSWILLER; MARK GOZA; J.E. GRAVENMIER; JIM
GREEN; SHARON GREEN; JEAN E. GRIMM; DR. MARK
HANDLE; MARY LYNN HANDLE; HYMAN HASS; JAMES
B. HASTY; JEAN PALMER HECK; DOUG HEINS;
ANTHONY A. HELM; BRENDA L. HELM; CAREY E.
HIDAKA; ERIC HOLMGREN; RON HOMMELSON; NAN
HUTCHINS; CHARLES JABBONSKY; GEORGE R. JONES;
LULA JONES; ROBERT JONES; DANIEL G. KAGAN;
JAMES E. KAY; BARBARA A. KAY; CHARLES KELLEY;
STEVE KELLY; JAMES KEMP; VICKY KEMP; THOMAS F.
KINDER; LLOYD J. KING; MARVIN KITCHEN; DELORES
KITCHEN; DR. LORA KRAVEC; DR. THOMAS KRAVEC;
MICHELLE LESSE; TIMOTHY MALONE; LORI MALONE;
MIKE MCINERNEY; C. STUART MCPHERSON; AAA
REALTY, INC.; WILLENE MITCHELL; NANCY

MOLHAGEN; WALTER H. MOORER, JR.; LEONARD
NELSON; KENNETH H. NORRIS; KHALEEL NURIDEEN;
CYNTHIA OLSEN; MAUREEN O'NEIL; DAVID C. POLICH;
SUSAN L. POMEROY; DAVID PRICE; NORMAN
REVOLINSKI; ROBERT T. REYES; JAMES REYNOLDS;
KATHY SCHOFIELD; WALTER SEMCHYSHYN; FRED
SHIMIZU; NANCY SHIMIZU; LOREINE SIMOPOULOS;
BERNIE K. SLOANE; PAUL T. SMITH; ERIC STOPPA;
DEBBIE STOPPA; SHEILA T. STRAUB; MARK SUDFELD;
JOSEPH TUCKER; ROSE TUCKER; PETER F. VON
SAVOYE, II; ERNEST C. WALSH; FRANK WALLACE
(WALLY) BROMBERG; PAUL NELSON WARE; SONNIE
WASHINGTON; KERMIT WORKMAN; SANDRA
WORKMAN; LANA ANDREWS; ROGER GAUTHIER;
GILBERG HELWIG; TONY OLIVER; BARBARA OLIVER;
ERNEST T. ODDO; DONALD BAILEY; LILLIAN BAILEY;
MARVIN WEIRICH; FREDDIE A. TATE; LINDA T.
NELSON; NANCY WOOD LOENING; STEPHEN CLINE;
TERRI CLINE; JAMES PETERS;

v.

*CHRYSLER LLC,
                                        Appellant

*(Per Clerk's Order 10/24/07)

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. Civil No. 95-cv-05569)
District Judge: The Honorable John C. Lifland

_____

Argued: June 24, 2008

_____

Before: SLOVITER, BARRY and ROTH, <u>Circuit Judges</u>

(Opinion Filed: August 7, 2008 )

2

D. Brian Hufford, Esq. (Argued)
Pomerantz, Haudek, Block, Grossman & Gross
100 Park Avenue, 26th Floor
New York, NY 10017-0000
    -AND-
Bruce D. Greenberg, Esq.
Allyn Z. Lite, Esq.
Lite, De Palma, Greenberg & Rivas
Two Gateway Center, 12th Floor
Newark, NJ 07102-0000

Counsel for Appellant

Theodore J. Boutrous, Jr., Esq. (Argued)
Gibson, Dunn & Crutcher
333 South Grand Avenue
Los Angeles, CA 90071-0000
    -AND-
Thomas R. Curtin, Esq.
Graham Curtin
Four Headquarters Plaza
P.O. Box 1991
Morristown, NJ 07962-0000

Counsel for Appellees

OPINION OF THE COURT

BARRY, Circuit Judge

Appellees are a putative class of owners of cars manufactured by appellant, Chrysler LLC ("Chrysler"). Almost thirteen years ago, they brought a products-liability action against Chrysler, claiming that certain braking systems in Chrysler's cars were defective. More specifically, in a complaint that was later

amended three times, appellees asserted a cause of action under the Magnuson-Moss Warranty-Federal Trade Commission Improvement Act (the "Magnuson-Moss Act" or the "Act"), 15 U.S.C. §§ 2301-12, and causes of action for common-law fraud and breach of implied and express warranties. Approximately one month after the first amended complaint was filed, however, Chrysler recalled the affected cars. Appellees voluntarily dismissed their complaint and moved for an award of attorneys' fees under the Act. Only after that motion was denied did appellees seek an award of attorneys' fees under California state law, although no substantive claim under California law had been pled, much less decided. The District Court granted the motion and awarded attorneys' fees and expenses in the amount of $4,654,433.14. Chrysler appeals that order. We will reverse.

## I. Factual and Procedural History

We put some meat on the bare bones of the history we have summarized above. Appellees filed their initial complaint on October 27, 1995. The complaint alleged that certain cars manufactured by Chrysler between 1990 and 1995 were equipped with a defective anti-lock braking system referred to as the "Bendix 10 ABS"; that in 1990 Chrysler began receiving complaints and requests for brake repairs but denied that the braking systems were prone to failure; and that, in response to Chrysler's inaction, appellees lodged complaints with the National Highway Traffic Safety Administration ("NHTSA") and the Center for Auto Safety. Appellees brought their Magnuson-Moss Act claim "on their own behalf" and their common-law fraud and breach of express and implied warranty claims "as a class action on behalf of all others similarly situated (the 'Class')." (J.A. 196.) They sought a declaration "that this action may properly proceed as a class action"; an injunction effectively requiring Chrysler to comply either with its obligations under the Act and the common law or to rescind the sales of the affected cars; payment of restitution and punitive damages; and an award of attorneys' fees and costs. Appellees amended their complaint on March 8, 1996 in order to broaden the class of affected car owners to include owners of Chrysler cars equipped with another, similar braking system that

4

they alleged was also defective: the "Bendix 9 ABS."[1]  Appellees moved to certify the class on July 26, 1996, a motion denied by the District Court by order dated September 11, 1998.  *Chin v. Chrysler Corp.*, 182 F.R.D. 448 (D.N.J. 1998).

In March 1994, before appellees filed their initial complaint, the NHTSA had, pursuant to its authority under the Motor Vehicle Safety Act, 49 U.S.C. § 30101 *et seq.*, initiated a preliminary evaluation of the braking systems installed on certain Chrysler cars for model years 1991 through 1993.  After a two-year investigation, the NHTSA determined that, in some instances, due to the deterioration to a part of the braking systems, the brakes' function "may be lost and reduced power assist may be experienced progressively during braking."  *Id.* at 452.  On April 15, 1996, a little more than a month after appellees filed their first amended complaint, Chrysler voluntarily recalled cars equipped with the Bendix 10 ABS.  In September 1996, the NHTSA began an inquiry into Chrysler cars equipped with the Bendix 9 ABS and, as a result, extended the recall to include those cars as well.  The recall required Chrysler to notify all affected consumers of the recalls and then to inspect all affected cars; replace any malfunctioning braking systems for free; extend the warranty on such braking systems to 10 years or 100,000 miles, whichever came first; and reimburse prior and current owners for any expenses car owners previously incurred in fixing their faulty braking systems.[2]  *Id.*

On January 29, 1999, appellees moved for a declaration that they could recover attorneys' fees under the fee-shifting provision of the Magnuson-Moss Act, *see* 15 U.S.C. § 2310(d)(2).  They relied on a "catalyst" theory, i.e. although they had voluntarily dismissed their claims against Chrysler, they nonetheless were a

---

[1]  Appellees amended their complaint for a second time on June 27, 1996 and for a third time on April 16, 1998.

[2]  Appellees argue that, while Chrysler had afforded them part of the relief they were seeking by implementing the two recalls, they "continued to pursue the remainder of the case, in part to ensure that the recalls were fully implemented so that Chrysler consumers would receive the benefits that Chrysler had 'voluntarily' agreed to provide."  (Appellees' Br. 6.)

5

"prevailing party" for attorneys' fees purposes because they had catalyzed Chrysler to provide them (at least in part) the relief they sought—a recall of all cars equipped with either the Bendix 10 ABS or Bendix 9 ABS. The motion was denied by a magistrate judge on August 24, 1999 and appellees appealed the decision to the District Court. Three months later, the Court granted appellees' unopposed motion for entry of a final judgment and order of dismissal purportedly under Rule 41(a)(2). The Court stated, however, that it would determine in a separate order appellees' appeal of the magistrate judge's order denying their motion for a declaration of a right to attorneys' fees under the Act.

The District Court reversed the magistrate judge's August 24, 1999 order by opinion and order dated December 14, 1999, declaring as a matter of law that appellees could proceed to seek attorneys' fees under the Act on a catalyst theory. The Court granted appellees' motion for additional discovery on the factual question of whether their lawsuit had actually catalyzed Chrysler to recall the faulty braking system-equipped cars. After discovery, appellees moved for a declaration that Chrysler was liable to them for attorneys' fees because appellees had, in fact, catalyzed Chrysler to act.

While this motion was pending, however, the Supreme Court held in *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources*, 532 U.S. 598, 605 (2001), that a party may not recover attorneys' fees under certain federal laws on a catalyst theory. Consequently, Chrysler moved for reconsideration of the December 14, 1999 order in light of *Buckhannon*. Appellees opposed the motion and cross-moved for an award of attorneys' fees under § 1021.5 of California's Civil Procedure Code, arguing that 25 of the more than 100 named plaintiffs were residents of California and entitled to fees under the "private attorney general" doctrine because they were a catalyst in providing a benefit to a large class of persons. Section 1021.5 provides as follows:

> Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the

6

enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any.

Cal. Civ. Proc. Code § 1021.5.

The District Court granted Chrysler's motion for reconsideration on August 13, 2003, holding that *Buckhannon* foreclosed an award of attorneys' fees under the Act on a catalyst theory. The Court also held, however, that appellees could, as a general matter, seek attorneys' fees under § 1021.5 but that it would defer final determination of whether appellees could specifically proceed on a catalyst theory pending forthcoming decisions of the California Supreme Court that were expected to decide whether doing so would be permissible under California law in light of *Buckhannon*.

On February 24, 2005, appellees advised the District Court that the California Supreme Court had decided the pending cases in their favor: *Buckhannon* did not foreclose a party's ability to recover fees under § 1021.5 on a catalyst theory.[3] In a subsequent letter brief to the Court, Chrysler argued, among other things, that New Jersey's choice-of-law rules precluded application of § 1021.5 in this case and that the Court was required to apply either federal procedural law or New Jersey state law. In a Memorandum and Order filed on July 19, 2006, the Court held that it would apply § 1021.5 and that appellees could proceed under that statute on a catalyst theory. After receiving evidence, the Court, by opinion and order dated November 9, 2006, held that appellees had in fact

---

[3] *See Tipton-Whittingham v. City of Los Angeles*, 101 P.3d 174 (Cal. 2004); *Graham v. DaimlerChrysler Corp.*, 101 P.3d 140 (Cal. 2004).

7

catalyzed Chrysler's corrective actions for purposes of § 1021.5, and that, accordingly, the Court would determine the amount of the attorneys' fees to be awarded. On May 14, 2007, the Court awarded appellees $4,478,421.38 in fees and $176,011.76 in expenses, for a total of $4,654,433.14.

## II. Standard of Review

We have jurisdiction under 28 U.S.C. § 1291. On this appeal, we need only decide questions of law over which we exercise plenary review. *Berg Chilling Sys., Inc. v. Hull Corp*, 435 F.3d 455, 462 (3d Cir. 2006).

## III. Discussion

Section 1021.5, the California fee-shifting statute, does not apply for the very fundamental reason that no substantive provision of California law was ever pled, much less was any violation of an underlying California cause of action ever found. Without more, this should have been game, set, and match. And there was no more. Indeed, given that the only connection between California and this action alleged by appellees was the fact that 25 of the appellees lived in that state, it is not surprising that § 1021.5 was mentioned for the first time only after the Supreme Court decided *Buckhannon* and the District Court found that, as a result, fees were foreclosed under the Act.

But even if a claim under California law had been specifically decided in appellees' favor—which is what Chrysler over these many years has wrongly assumed to have happened—Chrysler argues, correctly, that the District Court erred in holding that it could apply the California fee-shifting statute to this action because the Court applied the wrong state's law. The District Court sits in New Jersey, the argument goes, and thus was bound to apply New Jersey's choice-of-law rules. Had the Court applied those rules to this dispute, it would have determined that it was bound to apply New Jersey law to all procedural matters,

8

including a motion for attorneys' fees.[4]  We agree.

## A.    *Erie* and Choice-of-Law Principles

When a district court's jurisdiction is predicated on diversity of the parties, or when the court hears a state-law claim based on its supplemental jurisdiction, as we will assume it did here, the court must determine whether, under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), a matter is substantive or procedural.  *Simmons v. City of Phila.*, 947 F.2d 1042, 1085 (3d Cir. 1991).  If the matter is determined to be substantive, and a choice-of-law question is presented, the court must then perform a choice-of-law analysis to determine which state's substantive law applies.  The Supreme Court has made plain that these are two distinct questions.  In *Sun Oil Co. v. Wortman*, the Court held that *Guaranty Trust Co. v. York,* 326 U.S. 99 (1945) had

> reject[ed] the notion that there is an equivalence between what is substantive under the *Erie* doctrine and what is substantive for purposes of conflict of laws.  Except at the extremes, the terms "substance" and "procedure" precisely describe very little except a dichotomy, and what they mean in a particular context is largely determined by the purposes for which the dichotomy is drawn.

486 U.S. 717, 726 (1988) (citation omitted).

We emphasize that there are two distinct questions.  The first question, as suggested above, is for a court to determine whether, under *Erie*, the matter is procedural or substantive.  If the matter is procedural, and an applicable federal statute, rule, or

---

[4] Albeit belatedly, Chrysler argued in the District Court, and argues to us, that the District Court lacked subject matter jurisdiction because the initial complaint had pled a class claim under the Act but had not adequately alleged the Act's jurisdictional requisites. We have reviewed the parties' contentions and are satisfied that the District Court had subject matter jurisdiction.

policy exists, then federal procedural law applies; if the matter is substantive, the court must apply the substantive law of the forum state. *See Abrams v. Lightolier Inc.*, 50 F.3d 1204, 1223 (3d Cir. 1995).

If the court determines that it must apply the law of the forum state, and a choice-of-law question exists, the court must, at the second step, apply the choice-of-law rules of the forum state to determine *which* state's law applies. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). A district court may find a particular state law to be substantive for *Erie* purposes but procedural for purposes of a choice-of-law analysis. *See*, *e.g.*, *Boyd Rosene & Assocs., Inc. v. Kan. Mun. Gas Agency*, 174 F.3d 1115, 1118 (10th Cir. 1999).

## B.     New Jersey's Attorneys' Fees Rule Applied

Appellees were seeking attorneys' fees under the generous fee-shifting provision of California law based only on the fact that 25 of the plaintiffs were residents of that state. They argued that "state law must be applied in the interpretation of state law causes of action" (J.A. 48) and the District Court held that "[w]hen a state law claim is brought in federal court, that state's law should also be applied in determining whether to award attorneys' fees" (J.A. 28-29). In so holding, the Court also effectively held that for *Erie* purposes, the matter before it—a motion for attorneys' fees—was one of substantive state law. While the Court relied solely on a decision of the Ninth Circuit, the parties do not dispute that the proposition cited by the Court was correct. Indeed, we have held that, for *Erie* purposes, a party's asserted right to attorneys' fees is a matter of substantive state law. *Abrams*, 50 F.3d at 1223. Had this been a different kind of case in which no choice-of-law question existed, it might well have been proper for the Court to then proceed by applying an indisputably applicable state law (assuming, of course, that, unlike here, the law of a specific state had been pled).

But the District Court was confronted with a choice-of-law question—because the District Court sits in New Jersey, it was bound, Chrysler argued, to apply New Jersey's choice-of-law rules,

which precluded the application of California law and required the application of New Jersey law. As mentioned above, when a choice-of law question exists, a district court must apply the choice-of-law rules of the state in which it sits in order to determine which state's law applies. *Klaxon*, 313 U.S. at 496. Under New Jersey's choice-of-law rules, a court sitting in New Jersey is required to apply New Jersey rules to procedural matters even where those same rules require the application of the substantive law of another state. *N. Bergen Rex Transport, Inc. v. Trailer Leasing Co.*, 730 A.2d 843, 848 (N.J. 1999) (stating that under New Jersey's choice-of-law rules, "the procedural law of the forum state applies even when a different state's substantive law must govern"). The Supreme Court of New Jersey has made clear that an award of attorneys' fees is a procedural matter to which its court rules shall apply. *State v. Otis Elevator Co.*, 95 A.2d 715, 717 (N.J. 1953) ("From the outset in New Jersey, following English precedents, the allowance of costs and counsel fees had been uniformly considered by the courts of this State to be a matter of procedure rather than of substantive law."); *see also Mitzel v. Westinghouse Elec. Corp.*, 72 F.3d 414, 418 (3d Cir. 1995); *Du-Wel Prods., Inc. v. U.S. Fire Ins. Co.*, 565 A.2d 1113, 1120 (N.J. Super. Ct. App. Div. 1989).

New Jersey's attorneys' fees rule, New Jersey Court Rule 4:42-9(a), states that "[n]o fee for legal services shall be allowed in the taxed costs or otherwise" unless one of eight enumerated exceptions apply. This rule reflects the New Jersey courts' long held view that, as a general matter, "New Jersey has a strong policy disfavoring shifting of attorneys' fees. We have generally adhered to the so-called 'American Rule,' meaning that the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser." *N. Bergen*, 730 A.2d at 848 (internal quotation marks and citation omitted); *Van Horn v. City of Trenton*, 404 A.2d 615, 620 (N.J. 1979) ("Our rule of court, R. 4:42-9(a)[,] embodies the traditional 'American rule' that the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser.") (internal quotation marks and citation omitted); *State v. Otis Elevator Co.*, 95 A.2d 715, 728 (N.J. 1953).

The District Court erred in granting appellees' motion for

11

attorneys' fees under § 1021.5 of California law without having first performed a choice-of-law analysis to determine whether California law could even be applied. Had the Court undertaken that analysis, it would have determined that it was required to apply the procedural rules of New Jersey, which in turn would have required the application of Rule 4:42-9(a). Moreover, we reject appellees' argument, raised for the first time on appeal, that even if Rule 4:42-9(a) is applicable, they are still entitled to an award of attorneys' fees because sub-section (8) of that Rule provides an exception to the general prohibition against an award of attorneys' fees "[i]n all cases where counsel fees are permitted by statute." They argue that because counsel fees are permitted by a statute—§ 1021.5, the sub-section(8) exception is applicable, in effect arguing that under § 1021.5, a court *anywhere* may award attorneys' fees to a successful party in any action *anywhere* where the requisites of § 1021.5 have been met as long as the successful party lives in California.

The Supreme Court of New Jersey's decisions over the years have resoundingly reaffirmed New Jersey's adherence to the traditional American Rule disfavoring the award of attorneys' fees and the Court's reluctance to diverge from that rule. Moreover, the Court has "rigorously enforced" the narrow and specific exceptions to Rule 4:42-9(a) "lest they grow to consume the general rule itself." *Van Horn*, 404 A.2d at 620. We conclude, as a matter of law, that under the circumstances of this case, the exception invoked here is wholly inapplicable and, thus, that attorneys' fees are disallowed under Rule 4:42-9(a).[5]

---

[5] Appellees have brought a recent decision of the Supreme Court of New Jersey to our attention—*Mason v. City of Hoboken*, ___ N.J. ___, No. A-22-07, 2008 N.J. LEXIS 887 (N.J. July 22, 2008). The Supreme Court observed in *Mason* that New Jersey has long recognized the catalyst theory and its application to certain causes of action brought in the New Jersey courts, and applied it in *Mason* to an action brought under The Open Public Records Act, N.J.S.A. 47:1A1, and to "common law suits," presumably those invoking the common law right of access to records. *Id.* at *45, *50. Chrysler responds that *Mason* cannot save appellees' deficient fee award because, among other reasons, appellees never

## IV. Conclusion

We will reverse the order of the District Court awarding attorneys' fees and expenses.

brought an action under New Jersey law much less ever sought fees under New Jersey law. We agree.