# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-31162

United States Court of Appeals
Fifth Circuit

**FILED**
March 9, 2021

Lyle W. Cayce
Clerk

TARSIA WILLIAMS; BRECK WILLIAMS,

Plaintiffs–Appellants,

v.

LOCKHEED MARTIN CORPORATION, individually and as successor-in-interest to Martin Marietta, Incorporated,

Defendant–Appellee.

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:09-CV-65

Before OWEN, Chief Judge, and WILLETT and OLDHAM, Circuit Judges.

BY THE COURT:

IT IS ORDERED that this court, on its own motion, hereby grants panel rehearing of the decision filed on August 19, 2019; and

IT IS FURTHER ORDERED that the petition for rehearing en banc is denied; and

IT IS FURTHER ORDERED that the prior opinion is hereby withdrawn; and

IT IS FURTHER ORDERED that, in replacement of the withdrawn order, the attached substitute opinion be filed forthwith.

PRISCILLA R. OWEN, Chief Judge:

Frank Williams, Jr., filed suit in Louisiana state court against his former employer, Lockheed Martin Corporation (Lockheed Martin), seeking to recover damages for asbestos-related injuries. Williams's only children, Breck and Tarsia Williams (Plaintiffs), were substituted as plaintiffs after Frank Williams's death. Lockheed Martin removed the case asserting federal officer removal jurisdiction. The district court granted summary judgment in favor of Lockheed Martin and issued sanctions against Plaintiffs' counsel for improper ex parte communications. Plaintiffs challenge the district court's subject-matter jurisdiction, the summary judgment, various discovery orders, and the imposition of sanctions. We affirm the district court's judgment.

# I

This appeal is part of a larger action involving these plaintiffs and twenty-four defendants.[1] We recite only the facts relevant to the case against Lockheed Martin. Frank Williams filed suit in the Civil District Court for the Parish of Orleans, alleging his malignant mesothelioma resulted from exposure to asbestos while he was employed by Lockheed Martin's predecessor, Martin Marietta Corporation. For ease of reference, we will refer to both corporations as Lockheed Martin. Williams worked for Lockheed Martin at the NASA-owned Michoud Assembly Facility from 1974 to 1993.

Williams asserted multiple theories of liability, including strict liability, negligence, and intentional tort. In a deposition near the time of his death, Williams alleged that he worked on NASA "rockets" while employed by Lockheed Martin, and he believed those rockets contained asbestos. Lockheed Martin claimed that the only NASA products it manufactured at Michoud during Williams's employment were the External Fuel Tanks (EFTs) of the

---

[1] *See, e.g.*, *Williams v. Taylor Seidenbach, Inc.*, __ F.3d __, 2021 WL 773928 (5th Cir. 2021) (per curiam) (appeal of similar claims by these plaintiffs against defendants McCarty Corporation and Taylor Seidenbach, Inc.).

No. 18-31162

Space Shuttle Program. Based on this information, Lockheed Martin removed the action to the United States District Court for the Eastern District of Louisiana (district court) on the ground of federal officer removal jurisdiction under 28 U.S.C. § 1442(a)(1). Subsequently, the Judicial Panel on Multidistrict Litigation transferred the action to the *In re: Asbestos Products Liability Litigation*, MDL No. 875, pending in the United States District Court for the Eastern District of Pennsylvania (MDL court).

While the matter was pending in the MDL court, Williams's children, Tarsia and Breck Williams, were substituted as plaintiffs following their father's death. Plaintiffs amended the complaint to include survival and wrongful death claims. They then filed a motion to remand based on untimeliness of removal and lack of subject-matter jurisdiction, which was denied. Plaintiffs later renewed their motion to remand, which was also denied. In the latter motion, Plaintiffs disclaimed the EFTs as a potential source of asbestos and instead focused on asbestos allegedly present in the buildings at Michoud.

The MDL court granted summary judgment in favor of Lockheed Martin, determining that there was no evidence that Williams was exposed to asbestos prior to the date that asbestos exposure became covered by the Louisiana Worker's Compensation Act (LWCA). In accordance with the LWCA's exclusive remedy provision, the MDL court determined that the LWCA provided the only avenue for Plaintiffs' claims. The district court also imposed $10,000 in sanctions against Plaintiffs' attorney, Caleb Didriksen, for an ex parte conversation he initiated with a current Lockheed Martin employee.

The case was transferred back to the district court for resolution as to the remaining active defendants, and the district court entered judgment in Lockheed Martin's favor. Plaintiffs then filed a third motion to remand, which the district court denied. After the district court entered final judgment as to

No. 18-31162

each defendant, Williams filed this appeal challenging the district court's subject-matter jurisdiction, the summary judgment in favor of Lockheed Martin, various discovery orders, and the imposition of sanctions against Caleb Didriksen.

This panel previously dismissed this appeal for lack of appellate jurisdiction for the reasons set forth in the related case *Williams v. Taylor Seidenbach, Inc.*[2] Plaintiffs filed for en banc rehearing in that case, and we subsequently granted en banc rehearing in *Taylor Seidenbach* and determined that we had jurisdiction to hear the appeals.[3] Based on that en banc decision, we grant panel rehearing and substitute this opinion for the prior dismissal order.

## II

We first address Plaintiffs' contention that removal was improper and thus this court lacks subject-matter jurisdiction. Generally, questions of federal law in MDL-transferred cases are governed by the law of the transferee circuit.[4] The district court followed this rule and applied Third Circuit law. Because neither party has challenged the district court's holding on this point,

---

[2] 935 F.3d 358 (5th Cir. 2019), *on reh'g en banc sub nom.*, *Williams v. Seidenbach*, 958 F.3d 341 (5th Cir. 2020).

[3] *Seidenbach*, 958 F.3d at 344.

[4] *In re Korean Air Lines Disaster of Sept. 1, 1983* (*Korean Air Lines*), 829 F.2d 1171, 1176 (D.C. Cir. 1987), *aff'd on other grounds sub nom.*, *Chan v. Korean Air Lines, Ltd.*, 490 U.S. 122 (1989); *see In re Donald J. Trump Casino Sec. Litig.-Taj Mahal Litig.*, 7 F.3d 357, 368 n.8 (3d Cir. 1993) (citing *Korean Air Lines*, 829 F.2d at 1176) (assuming without deciding that the law of the MDL circuit applies); *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1138 (5th Cir. 1992) ("When a case is transferred from a district in another circuit, the precedent of the circuit court encompassing the transferee district court applies to the case on matters of federal law."); 15 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3867 (4th ed. 2020) (explaining that when a case is remanded to the transferor court, the transferor court "should be required to defer to the transferee court's ruling as 'law of the case'" to "avoid undoing" the transferee court's work).

we assume without deciding that the district court was correct and apply Third Circuit law.[5]

Lockheed Martin removed based on federal officer removal jurisdiction after Williams's deposition testimony revealed possible asbestos exposure from his work on the EFTs. Federal officer removal jurisdiction is available to persons acting under an agency of the United States who assert a colorable federal defense.[6] Plaintiffs did not allege in their complaint that the EFTs were in any way involved in Williams's asbestos exposure at Lockheed Martin, and they now disclaim any previous assertion that the EFTs were involved in the alleged asbestos exposure, asserting that Williams's deposition testimony was mistaken. On appeal, Plaintiffs make several arguments challenging the district court's subject-matter jurisdiction on this basis.

As part of their argument for lack of subject-matter jurisdiction, Plaintiffs assert that removal was improper because the district court was not permitted to look beyond the allegations in the complaint at the time of removal. There is some debate among courts as to whether a district court is limited to the allegations in the complaint, whether it is limited to the complaint and the notice of removal, or whether it can look at the full state-court record at the time of removal.[7] The majority view is that the district

---

[5] *See In re Donald J. Trump*, 7 F.3d at 368 n.8 (citing *Korean Air Lines*, 829 F.2d at 1176); *cf. In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 742 F.3d 576, 586 (5th Cir. 2014) (declining to reach the issue of which circuit's law applied to MDL-transferred case because the outcome was the same under either circuit's precedent).

[6] *Papp v. Fore-Kast Sales Co., Inc.*, 842 F.3d 805, 811 (3d Cir. 2016).

[7] *See* 14C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3722 (Rev. 4th ed. 2020) ("[W]hen the source or substantive nature of the plaintiff's claim is not obvious from the complaint, the cases are in conflict as to whether the district court may look to any other pleadings that exist at the time of removal or only to the original complaint and the notice of removal. The better view seems to be that the district court may resort to other materials in the record to inform itself whether it has subject-matter jurisdiction."); *id.* § 3734 (collecting cases).

No. 18-31162

court can consider the full record to determine removability.[8]   The Third Circuit has not held explicitly which of the differing views it would apply.  But in a case with facts nearly identical to this one, the Third Circuit implicitly affirmed the district court's reliance on information outside of the complaint.[9]

In *Papp v. Fore-Kast Sales Co.*, a tort case based on alleged workplace asbestos exposure, defendant Boeing asserted that it was not aware that plaintiff Papp was making a claim relating to Boeing's role as a federal contractor until Papp's deposition.[10]  During that deposition, Boeing learned for the first time that Papp's allegations related to her work on a specific aircraft that Boeing had produced for the United States military.[11]  The Third Circuit determined that the thirty-day timeline for removal began on the date Papp was deposed because the complaint itself did not inform Boeing that all elements of federal jurisdiction were present.[12]  In evaluating the removal claim, the *Papp* court looked not only to the complaint, but also to the facts alleged in the notice of removal, which included Papp's deposition testimony.[13]

Here, we face essentially the same scenario, though not in the context of a timeliness challenge.  Lockheed Martin did not become aware that Williams was claiming asbestos exposure from work involving the EFTs until his deposition.  Lockheed Martin should not be deprived of a federal forum simply because Williams did not specify in his complaint that he believed the EFTs to be a possible source of asbestos exposure.  We conclude that the district court

---

[8] *Id.* § 3734 ("[I]n practice, the federal courts usually do not limit their inquiry to the face of the plaintiff's complaint, but rather consider the facts disclosed in the record of the case as a whole, in determining the propriety of removal." (collecting cases)).

[9] 842 F.3d at 811-16.

[10] *Id.* at 816 n.10.

[11] *Id.*

[12] *Id.*

[13] *See id.* at 809-15 (evaluating the viability of Boeing's removal claim based on facts alleged in Papp's deposition testimony).

properly considered the full state-court record as it existed at the time of removal.[14]

Plaintiffs also argue that even if the district court could consider the full record at the time of removal, this case does not meet the requirements for removal under § 1442(a). "Unlike the general removal statute, the federal officer removal statute is to be 'broadly construed' in favor of a federal forum."[15] A defendant must meet four requirements to properly remove a case under § 1442(a)(1):

> (1) [the defendant] is a "person" within the meaning of the statute; (2) the [plaintiff's] claims are based upon the [defendant's] conduct "acting under" the United States, its agencies, or its officers; (3) the [plaintiff's] claims against [the defendant] are "for, or relating to" an act under color of federal office; and (4) [the defendant] raises a colorable federal defense to the [plaintiff's] claims.[16]

Lockheed Martin easily meets the first two requirements. First, Lockheed Martin, "a corporation, is in legal fact a person."[17] Second, this is an "archetypal case" of a defendant's conduct "acting under" the United States.[18] Williams's "allegations are directed at actions [Lockheed Martin] took while working under a federal contract to produce an item the government needed, to wit, [EFTs], and that the government otherwise would have been forced to produce on its own."[19]

The third requirement, "often referred to as the 'nexus' or 'causation' requirement," is also met here.[20] To satisfy this requirement, "it is sufficient

---

[14] *See Williams v. Taylor Seidenbach, Inc.*, __ F.3d __, 2021 WL 773928, at *2 (5th Cir. 2021) (per curiam) (referring to the deposition testimony in the full state-court record to show the third factor was met, and ultimately holding that Lockheed Martin's removal was proper).

[15] *Papp*, 842 F.3d at 811-12 (quoting *In re Commonwealth's Motion to Appoint Couns. Against or Directed to Def. Ass'n of Phila.* (*Def. Ass'n*), 790 F.3d 457, 466-67 (3d Cir. 2015)).

[16] *Id.* at 812 (alterations in original) (quoting *Def. Ass'n*, 790 F.3d at 467).

[17] *Id.*

[18] *Id.* at 813.

[19] *Id.*

[20] *Id.*

for there to be a connection or association between the act in question and the federal office."[21]   Here, Williams alleged multiple liability theories against Lockheed Martin, "including strict liability for any asbestos to which he may have been exposed at Michoud and failure to warn of alleged asbestos hazards." The requisite nexus exists here because Lockheed Martin alleged that the United States,

> through NASA, issued detailed material, design, and performance specifications for the fuel tanks and exercised direct control over all aspects of fuel tank design, development, and production. NASA specified and required all components of the fuel tanks, whether asbestos-containing or otherwise.  NASA also controlled written materials and markings accompanying the fuel tanks, including all warnings and health-related safeguards associated with them.

Those alleged facts satisfy the "for or relating to requirement" because they demonstrate a direct connection between the United States and both the materials used to construct the EFTs and any warnings associated with the EFTs.[22]

The fourth requirement, whether Lockheed Martin has made out a colorable federal defense, is the closest call.  Lockheed Martin stated in its notice of removal that it was entitled to the federal government contractor defense.  The Supreme Court set forth the elements of this defense in *Boyle v. United Technologies Corporation*.[23]  The defense applies "when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the

---

[21] *Id.* (quoting *Def. Ass'n*, 790 F.3d at 471).
[22] *See id.*
[23] 487 U.S. 500 (1988).

supplier but not to the United States."[24]

Lockheed Martin and Plaintiffs advance different theories about how we should apply these elements to this case. Lockheed Martin argued in its notice of removal that it meets all three elements "because the design specifications for the [EFTs] were government-mandated, the [EFTs] conformed to these specifications, and, to the extent that asbestos was known at the time to be a hazardous material, the government's knowledge of such hazards was superior to the knowledge of Lockheed Martin." Plaintiffs, however, characterize the elements differently, focusing on the presence of asbestos in the EFTs. They claim that Lockheed Martin was required to prove that "its contract with the federal government (here, with NASA) regarding the design and construction of the EFT obliged [Lockheed Martin] to use asbestos in the construction of the EFT, that [Lockheed Martin] used such asbestos, and that [Lockheed Martin] warned NASA that using asbestos was dangerous."

Lockheed Martin has the better reading of the elements. Plaintiffs' reading would require Lockheed Martin to concede that the EFTs contained asbestos. But to secure removal, a federal contractor "need not admit that [it] actually committed the charged offenses."[25] The purpose of *Boyle*'s first two elements is to "assure that the design feature in question was considered by a Government officer, and not merely by the contractor itself."[26] This does not mean that Lockheed Martin must admit that the EFTs contained asbestos. The element is satisfied by showing that NASA had complete control over the design of the EFTs and the materials used. In that case, if asbestos was used

---

[24] *Id.* at 512.

[25] *Willingham v. Morgan*, 395 U.S. 402, 408 (1969) (citing *Maryland v. Soper*, 270 U.S. 9, 32-33 (1926)).

[26] *Boyle*, 487 U.S. at 512.

in constructing the EFTs, it must have been at NASA's direction or with NASA's approval.

Lockheed Martin's reading of the third *Boyle* element is the better one for essentially the same reasons. First, Lockheed Martin was required to warn NASA about the dangers of asbestos only if asbestos was actually used in constructing the EFTs. Second, even assuming asbestos was used, Lockheed Martin was required to inform NASA of its dangers only to the extent that those dangers were known to Lockheed Martin but not to NASA. The purpose of the third element is to discourage the contractor from withholding its knowledge of risks and "cutting off information highly relevant to the discretionary decision."[27] Therefore, assuming Lockheed Martin is correct that NASA had greater knowledge than Lockheed Martin regarding the dangers of asbestos, Lockheed Martin had no obligation to inform NASA of those dangers. The Plaintiffs' reading of the third element does not account for this possibility.

Importantly, Lockheed Martin "need not win [its] case before [it] can have [the case] removed."[28] "At the removal stage, [Lockheed Martin] needed only show that its asserted *Boyle* defense was 'colorable,' which is to say that the defense was 'legitimate and [could] reasonably be asserted, given the facts presented and the current law.'"[29]

Lockheed Martin has stated sufficient facts to make out a colorable *Boyle* defense: (1) Lockheed Martin alleged that "NASA issued detailed material, design, and performance specifications for the [EFTs] and exercised direct control over all aspects of [EFT] design, development, and production"; (2) Lockheed Martin alleged that it "could not deviate from NASA's

---

[27] *Id.* at 512-13.

[28] *Papp v. Fore-Kast Sales Co., Inc.*, 842 F.3d 805, 815 (3d Cir. 2016) (quoting *Willingham*, 395 U.S. at 407).

[29] *Id.* (second alteration in original) (quoting *Colorable Claim*, BLACK'S LAW DICTIONARY (10th ed. 2014)).

No. 18-31162

specifications without specific authorization and approval from NASA personnel" and that NASA maintained inspectors at Michoud to ensure compliance; and (3) Lockheed Martin claimed that NASA had superior knowledge of the dangers of asbestos. Taking these facts as true, Lockheed Martin has made out a colorable federal defense and established its entitlement to proceed in federal court.[30]

The two unpublished district court decisions Plaintiffs point to as justifying remand do not alter our decision. According to Plaintiffs, the two decisions are "virtually identical" to the facts here, involving "identical allegations," "overlapping defendants," "identical government contractors and contracts," and the "same buildings as in this case." Although Plaintiffs are correct that the two decisions share several similarities with this case, there are critical differences that distinguish those decisions from the facts here. In any event, they are not precedential.

In *Addotto v. Equitable Shipyards, LLC*, the defendant was a property maintenance subcontractor at Michoud.[31] The defendant contracted with Lockheed Martin, not the federal government.[32] Nonetheless, the defendant removed to federal court under § 1442, arguing that the federal government exercised control over the air conditioning at Michoud.[33] The district court rejected the defendant's removal argument, concluding that "a subcontractor with no direct contract with the government cannot satisfy the acting under

---

[30] *See id.* at 814-15; *Williams v. Taylor Seidenbach, Inc.*, __ F.3d __, 2021 WL 773928, at *2 (5th Cir. 2021) (per curiam) (holding Lockheed Martin adequately pled a colorable government contractor defense and therefore, because all four requirements were met, the case was properly removed under 28 U.S.C. § 1442(a)(1)).

[31] No. 13-5807, 2014 WL 1389632, at *1 (E.D. La. Mar. 31, 2014).

[32] *Id.*

[33] *Id.* at *3-4.

11

requirement" of § 1442.[34]  In this case, Lockheed Martin contracted directly with NASA for the design and manufacture of the EFTs.  Lockheed Martin's contract here, unlike the contract in *Addotto*, was directly with the government, not with a nongovernmental middleman.

In *Ross v. Reilly Benton, Inc.*, the defendant contracted directly with NASA to perform repair and maintenance at Michoud.[35]  The plaintiff sued the defendant for failure to provide a safe workplace, and the defendant removed the action to federal court under § 1442.[36]  The court remanded the case, concluding that the defendant had failed to show government control over the details of the defendant's facility maintenance work.[37]  The court noted that the defendant's contract with NASA gave the defendant "vast and broad responsibilities with only very general specifications as to how those duties [were] to be carried out."[38]  Under the contract, the defendant had "'complete responsibility' for acquiring its own supplies."[39]

Here, by contrast, the contract in question gave NASA extensive control over the design and manufacture of the EFTs.  NASA "issued detailed material, design, and performance specifications for the [EFTs] and exercised direct control over all aspects of [EFT] design, development, and production."  NASA also maintained permanent, on-site inspectors at Michoud to ensure that Lockheed Martin was complying with these specifications.  Given these critical differences, the district court's decision in *Ross* is not persuasive.

---

[34] *Id.* at \*4 (citing *Morgan v. Great S. Dredging, Inc.*, No.11-2461, 2012 WL 4564688, at \*6 (E.D. La. Sept. 30, 2012)).

[35] No. 14-1161, 2014 WL 3514668, at \*2 (E.D. La. July 15, 2014).

[36] *Id.* at \*1.

[37] *Id.* at \*2-4.

[38] *Id.* at \*3.

[39] *Id.*

No. 18-31162

Finally, Plaintiffs argue that Lockheed Martin has not met its continuous jurisdictional burden because Plaintiffs no longer assert that Williams was exposed to asbestos while working on the EFTs or that the EFTs contained asbestos at all. However, the district court did not lose jurisdiction once Plaintiffs ceased to assert a claim that was subject to the federal contractor defense.[40] Nor does a federal court lose jurisdiction if the facts later indicate the federal defense fails. "Generally speaking, the nature of plaintiffs' claim must be evaluated, and the propriety of remand decided, on the basis of the record as it stands *[a]t the time the petition for removal is filed*."[41] Plaintiffs did not disclaim the allegations relating to the EFTs until after their first motion to remand. Nor does the record indicate that at the time of removal, the federal contractor defense was insubstantial on its face or "obviously frivolous."[42] At the time the petition for removal was filed, subject-matter jurisdiction existed based on the federal contractor defense. Accordingly, the

---

[40] *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 474 n.6 (2007) ("[W]hen a defendant removes a case to federal court based on the presence of a federal claim, an amendment eliminating the original basis for federal jurisdiction generally does not defeat jurisdiction."); *see Anderson v. Elec. Data Sys. Corp.*, 11 F.3d 1311, 1315-16 (5th Cir. 1994) (determining that even when state court petition did not allege any federal causes of action and later amendment to the complaint deleted references to ERISA, removal was proper and district court had subject-matter jurisdiction because state causes of action were preempted by ERISA); 14C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3722 (Rev. 4th ed. 2020) (noting that "federal courts often refuse to permit a plaintiff to precipitate a remand to state court by amending the complaint to eliminate the federal claim that was the basis for the removal" although some courts exercise their discretion to remand).

[41] *Westmoreland Hosp. Ass'n v. Blue Cross of W. Pa.*, 605 F.2d 119, 123 (3d Cir. 1979) (emphasis added) (citing *Pullman Co. v. Jenkins*, 305 U.S. 534, 537 (1939)).

[42] *Hagans v. Lavine*, 415 U.S. 528, 537 (1974) (quoting *Hannis Distilling Co. v. Mayor of Baltimore*, 216 U.S. 285, 288 (1910)); *see Felice v. Sever*, 985 F.2d 1221, 1225 (3d Cir. 1993) ("The fact that the federal claims that were the basis for the removal were unsuccessful or were dropped during subsequent proceedings does not deprive the district court of jurisdiction, unless the federal claims were 'insubstantial on their face.'" (quoting *Hagans*, 415 U.S. at 542 n.10)).

13

No. 18-31162

exercise of supplemental jurisdiction over the remaining state law claims was also proper.[43]

## III

Next, Plaintiffs challenge various discovery orders. Plaintiffs allege that Lockheed Martin failed to engage in the discovery process by not providing requested deponents and documents that were at its sole disposal. Plaintiffs claim these alleged discovery violations unfairly prejudiced them in this matter, though they offer no specifics as to how they were prejudiced.

"[T]he scope and conduct of discovery are within the sound discretion of the trial court," and discovery orders are reviewed for abuse of discretion.[44] The trial court abuses its discretion "only if there is either an interference with a substantial right or a gross abuse that could result in fundamental unfairness at trial."[45] "[W]e will not upset a district court's conduct of discovery procedures absent a demonstration that the court's action made it impossible to obtain crucial evidence, and implicit in such a showing is proof that more diligent discovery was impossible."[46] Plaintiffs' allegations fail to satisfy this standard. Plaintiffs have not identified any "crucial evidence" they could not obtain as a result of the trial court's discovery orders. Nor did they explain how the denial of these discovery requests could result in fundamental unfairness at trial. The district court did not abuse its discretion with respect

---

[43] 28 U.S.C. § 1367(a); 14C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3739.1 (Rev. 4th ed. 2020) ("[T]he district court has discretion to continue to hear claims within supplemental jurisdiction that have been removed under Section 1441 even after the jurisdictionally sufficient claim or claims providing the basis for removal have been eliminated from the action.").

[44] *Marroquin-Manriquez v. I.N.S.*, 699 F.2d 129, 134 (3d Cir. 1983) (first citing *Borden Co. v. Sylk*, 410 F.2d 843, 845 (3d Cir. 1969); then citing *Montecatini Edison S.p.A. v. E.I. du Pont de Nemours & Co.*, 434 F.2d 70, 72 (3d Cir. 1970)).

[45] *Redland Soccer Club, Inc. v. Dep't of Army of U.S.*, 55 F.3d 827, 845 (3d Cir. 1995) (citing *Marroquin-Manriquez*, 699 F.2d at 134).

[46] *Gallas v. Sup. Ct. of Pa.*, 211 F.3d 760, 778 (3d Cir. 2000) (alteration in original) (quoting *In re Fine Paper Antitrust Litig.*, 685 F.2d 810, 818 (3d Cir. 1982)).

No. 18-31162

to any of the challenged discovery orders.

## IV

Plaintiffs also challenge the summary judgment in favor of Lockheed Martin on their survival and wrongful death claims. We review a summary judgment de novo, applying the same standard as the district court.[47] Summary judgment is proper if the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[48] Louisiana law governs Plaintiffs' tort claims.[49]

To determine whether Plaintiffs may proceed in tort, we must assess whether Plaintiffs' claims are governed by the LWCA. Mesothelioma became a covered occupational disease under the LWCA on September 1, 1975.[50] The LWCA contains an exclusive remedy provision that bars tort claims against an employer for workplace injuries, except for claims resulting from an intentional act.[51] Plaintiffs' ability to bring claims other than those for intentional acts accordingly rests on the date those claims accrued. Mesothelioma claims that accrued after the 1975 amendment to the LWCA are barred by the exclusive remedy provision.

The district court granted summary judgment on Plaintiffs' tort claims because it determined that Plaintiffs had presented no admissible evidence that Williams was exposed to asbestos prior to the 1975 amendment to the LWCA. It noted that although Plaintiffs presented expert testimony stating that Williams was exposed to asbestos in the sixteen months he worked at Michoud prior to the amendment, that evidence was insufficient to defeat

---

[47] *Tundo v. Cty. of Passaic*, 923 F.3d 283, 286 (3d Cir. 2019) (citing *Giles v. Kearney*, 571 F.3d 318, 322 (3d Cir. 2009)).

[48] FED. R. CIV. P. 56(a).

[49] *See Chin v. Chrysler LLC*, 538 F.3d 272, 278 (3d Cir. 2008).

[50] *See Austin v. Abney Mills, Inc.*, 824 So. 2d 1137, 1140-41 (La. 2002).

[51] LA. STAT. ANN. § 23:1032 (1995).

15

summary judgment.   The district court reasoned that because the expert testimony rested on factual assumptions rather than actual evidence, "no reasonable jury could conclude from the evidence that [Williams] was exposed to asbestos because any such conclusion would be impermissibly speculative." It also determined that Plaintiffs' intentional tort claims failed because Plaintiffs "d[id] not even purport to have evidence that [Lockheed Martin] consciously intended to harm or kill [Williams]."[52]   Accordingly, the district court determined that the LWCA provided the exclusive remedy for both the survival and wrongful death claims and granted summary judgment in favor of Lockheed Martin.   On appeal, Plaintiffs contend that the district court improperly disregarded their expert's testimony that Williams was exposed to asbestos in the sixteen months he worked at Michoud before the 1975 amendment.

As to the wrongful death claim, summary judgment in favor of Lockheed Martin was proper.  "[T]he wrongful death action does not arise until the victim dies[,] and it compensates the beneficiaries for their own injuries[,] which they suffer from the moment of the victim's death and thereafter."[53]  Williams died in 2009, and at that time the LWCA provided the exclusive remedy for an employee's injury or death as a result of mesothelioma.[54]  Because Plaintiffs' wrongful death claim was barred by the LWCA, the district court correctly granted summary judgment as to that claim.

Establishing when the survival claims accrued is more complicated. Under Louisiana law, the time of accrual of a workplace-asbestos-exposure

---

[52] Plaintiffs make no arguments on appeal relating to the district court's determinations as to the intentional tort claims, so those claims are waived. *See Sheinberg v. Sorensen*, 606 F.3d 130, 133-34 (3d Cir. 2010).

[53] *Walls v. Am. Optical Corp.*, 740 So. 2d 1262, 1273 (La. 1999) (quoting *Taylor v. Giddens*, 618 So.2d 834, 840 (La. 1993)).

[54] LA. STAT. ANN. § 23:1032 (1995).

cause of action is determined by the "significant tortious exposure theory."[55] To establish accrual of the cause of action under that theory, "the plaintiff must present evidence that the exposures were 'significant and such exposures later result[ed] in the manifestation of damages.'"[56]  "[I]n asbestos cases, the term 'exposure' refers to inhalation of asbestos fibers into the lungs."[57]  "[T]ortious exposures are significant when asbestos dust has so damaged the body that the fibrogenic effects of its inhalation will progress independently of further exposure."[58]  "There is no bright line test to establish significant exposure in cases involving latent diseases.  However, expert medical testimony establishing that the exposure was sufficient enough to begin the disease process is acceptable to fix the time period for accrual of the cause of action."[59]

To survive summary judgment, Plaintiffs were required to produce evidence that the cause of action accrued prior to the 1975 amendment.[60]  To do so, Plaintiffs needed to show that there was a genuine issue of fact as to (1) whether Williams was exposed to asbestos in the first sixteen months of his employment and (2) whether that exposure was "significant."  Plaintiffs' evidence lacks the temporal specificity to create a fact issue as to the first element.

Crucially, Plaintiffs presented no evidence that Williams inhaled asbestos fibers during the first sixteen months of his employment.  Plaintiffs point to the report of their expert, Frank Parker, and to the affidavit of Williams's longtime coworker, George Stemley, to establish Williams's pre-

---

[55] *Austin*, 824 So. 2d at 1154.

[56] *Id.* at 1154 (alteration in original) (quoting *Cole v. Celotex Corp.*, 599 So.2d 1058, 1066 (La. 1992)).

[57] *Abadie v. Metro. Life Ins. Co.*, 784 So. 2d 46, 93 (La. Ct. App. 5th Cir. 2001) (per curiam) (citing *Asbestos v. Bordelon, Inc.*, 726 So. 2d 926, 948 (La. Ct. App. 4th Cir. 1998)).

[58] *Austin*, 824 So. 2d at 1154 (quoting *Abadie*, 784 So. 2d at 64).

[59] *Abadie*, 784 So. 2d at 65.

[60] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

amendment asbestos exposure.  However, neither of these documents provides evidence that prior to the amendment, Williams worked in or frequented buildings that contained asbestos and therefore would have likely inhaled asbestos fibers at work.  In his expert report, Parker lists buildings in which Williams worked and claims that those buildings contained asbestos.  But Parker acknowledged that he does not have personal knowledge of the buildings in which Williams worked.  His assertion of these facts therefore does not provide competent evidence of exposure on summary judgment.[61]

Nor do the sources Parker relied on themselves provide evidence of exposure during the first sixteen months of Williams's employment.  Parker's expert report relies on two sources for factual information: Stemley's affidavit and Breck Williams's deposition testimony.  Breck Williams's deposition is not in the record, so we cannot consider it.[62]  Stemley's affidavit lists buildings that Williams worked in during his time at Michoud, and this information is based on Stemley's personal knowledge.  However, Stemley also states in his affidavit that he did not meet Williams until Stemley began work at Michoud in 1976.  His affidavit therefore provides no evidence as to where Williams worked during the crucial sixteen-month period between 1974 and 1975.

---

[61] *See* FED. R. CIV. P. 56(c)(4) (noting that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge"); *In re Citric Acid Litig.*, 191 F.3d 1090, 1102 (9th Cir. 1999) ("The law is clear . . . that an expert report cannot be used to prove the existence of facts set forth therein."); *Lewis v. Par. of Terrebonne*, 894 F.2d 142, 146 (5th Cir. 1990) ("An expert's opinion must be preceded by facts in evidence and cannot be the basis of speculation or conjecture." (citing *Reichenbach v. Smith*, 528 F.2d 1072, 1074 (5th Cir. 1976))); *cf. Williams v. Illinois*, 567 U.S. 50, 69 (2012) ("[A]n expert may base an opinion on facts that are 'made known to the expert at or before the hearing,' but such reliance does not constitute admissible evidence of this underlying information." (first quoting ILL. R. EVID. 703; and then citing FED. R. EVID. 703)).

[62] *See Garcia v. Am. Marine Corp.*, 432 F.2d 6, 8 (5th Cir. 1970) (per curiam) (stating that we cannot "reverse a trial court on the basis of facts not in the record"); FED. R. CIV. P. 56(c)(1)(A) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials *in the record* . . . ." (emphasis added)).

No. 18-31162

At the very least, to create a fact issue as to whether Williams was exposed to asbestos prior to the 1975 amendment, Plaintiffs needed to produce evidence that Williams worked in or frequented a building that contained asbestos during that time.  Plaintiffs have produced no evidence of which building Williams worked in, nor did they produce evidence that would render this unnecessary, such as evidence that all buildings at Michoud in 1974 and 1975 contained asbestos.  Because Plaintiffs point to no evidence showing that Williams was exposed to asbestos prior to the 1975 amendment, they have not presented evidence that the cause of action accrued prior to that amendment.  Their claims are therefore barred by the exclusive remedy provision of the LWCA.[63]  Summary judgment in favor of Lockheed Martin was appropriate.

## V

Finally, Plaintiffs argue that the district court erred when it imposed sanctions on their attorney, Caleb Didriksen, for ex parte communications.  The sanctions resulted from a telephone conversation Didriksen had with Richard Smith.  Smith was Williams's former supervisor at Lockheed Martin and was still working for Lockheed Martin when Didriksen interviewed him via telephone.  Lockheed Martin moved to disqualify Didriksen and his firm for improper ex parte communications under Rule 4.2 of the Pennsylvania Rules of Professional Conduct.  Rule 4.2 prevents a lawyer from "communicat[ing] about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order."[64]

The magistrate judge determined that Smith was a no-contact employee

---

[63] *See* LA. STAT. ANN. § 23:1032 (1995).
[64] 204 PA. CODE Rule 4.2 (1988).

under Rule 4.2 because, as Williams's supervisor, "Smith [was] a person whose acts or omissions in connection with Mr. Williams'[s] asbestos exposure [could] be imputed to Lockheed [Martin]." The magistrate judge also determined that the court could infer that Didriksen knew that Smith was a Lockheed Martin employee because Rule 4.2 obligates attorneys to determine whether an individual is represented by counsel before engaging in any substantive ex parte communications. As a result of this violation, the magistrate judge granted Lockheed Martin $10,000 in partial attorney's fees and costs but declined to disqualify Didriksen and his firm. The magistrate judge also noted that apart from the violation of Rule 4.2, Didriksen's contact with Smith amounted to litigation misconduct, which independently supported the sanction she imposed. The district court overruled Plaintiffs' objections to the magistrate judge's order, determining that the order was "neither clearly erroneous nor contrary to law." Plaintiffs challenge both the determination that Didriksen violated Rule 4.2 and the particular sanction imposed. We agree with the district court's assessment.

The Eastern District of Pennsylvania has adopted the Pennsylvania Rules of Professional Conduct.[65] The interpretation and application of those rules is governed by federal law.[66] "The district court's power to disqualify an attorney derives from its inherent authority to supervise the professional conduct of attorneys appearing before it."[67] We review for abuse of discretion

---

[65] E.D. PA. R. CIV. P. 83.6, Rule IV.

[66] *See United States v. Miller*, 624 F.2d 1198, 1200 (3d Cir. 1980) ("Supervision of the professional conduct of attorneys practicing in a federal court is a matter of federal law." (citing *Int'l Bus. Machs. Corp. v. Levin*, 579 F.2d 271, 279 n.2 (3d Cir. 1978))); *In re Am. Airlines, Inc.*, 972 F.2d 605, 610 (5th Cir. 1992) ("Federal courts may adopt state or ABA rules as their ethical standards, but whether and how these rules are to be applied are questions of federal law.").

[67] *Miller*, 624 F.2d at 1201 (citing *Richardson v. Hamilton Int'l Corp.*, 469 F.2d 1382, 1385-86 (3d Cir. 1972)); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991).

No. 18-31162

orders imposing sanctions pursuant to the court's inherent authority.[68]  "[A] district court abuses its discretion in imposing sanctions when it 'base[s] its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence.'"[69]

The district court's determination that Didriksen violated Rule 4.2 was not based on an erroneous view of the law or a clearly erroneous assessment of the evidence.  However, a violation of Rule 4.2 does not automatically authorize the assessment of $10,000 in attorney's fees.

When acting pursuant to its inherent powers, a court can shift attorney's fees only in a few circumstances.  "[T]he narrow exceptions to the American Rule effectively limit a court's inherent power to impose attorney's fees as a sanction to cases in which a litigant has engaged in bad-faith conduct or willful disobedience of a court's orders."[70]  Examples of bad faith include "when the party practices a fraud upon the court or delays or disrupts the litigation or hampers a court order's enforcement."[71]

Here, the district court was not empowered to impose sanctions in the form of attorney's fees absent a finding of bad faith, or a finding that Didriksen willfully disobeyed the court's orders.[72]  In concluding that Didriksen violated Rule 4.2, the magistrate judge noted that "[n]either willful conduct, nor bad faith, is necessary to establish a Rule 4.2 violation."  Although that is true, it

---

[68] *Martin v. Brown*, 63 F.3d 1252, 1262 (3d Cir. 1995).

[69] *Grider v. Keystone Health Plan Cent., Inc.*, 580 F.3d 119, 134 (3d Cir. 2009) (second alteration in original) (quoting *Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 538 (3d Cir. 2007)).

[70] *Chambers*, 501 U.S. at 47; *see Republic of Phil. v. Westinghouse Elec. Corp.*, 43 F.3d 65, 74 n.11 (3d Cir. 1994) (noting that while not all sanctions imposed under the court's inherent powers require a finding of bad faith, attorney's fees as a sanction does require such a finding).

[71] *Chambers*, 501 U.S. at 33 (citations omitted) (examples of bad faith included in the syllabus of the case).

[72] *See generally Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178 (2017).

21

does not follow that the court can assess a sanction of attorney's fees without either of those findings. The standard for finding a Rule 4.2 violation is not the same as the standard for shifting attorney's fees. To exercise the court's inherent power to assess attorney's fees as a sanction, the magistrate judge was required to make a finding that Didriksen "acted in bad faith, vexatiously, wantonly, or for oppressive reasons."[73]

The magistrate's findings that Didriksen acted intentionally and "closed his eyes to the obvious" are sufficient to find that Didriksen acted knowingly for purposes of Rule 4.2, and they are tantamount to findings that Didriksen acted in bad faith. The district court did not abuse its discretion in awarding $10,000 in attorney's fees.

*    *    *

The judgment in favor of Lockheed Martin is AFFIRMED.

---

[73] *Chambers*, 501 U.S. at 33 (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258-59 (1975)).