# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

May 13, 2024

Lyle W. Cayce
Clerk

No. 23-30522

Pebbles Martin, *formerly identified in these proceedings as* Jane Doe,

*Plaintiff—Appellee,*

*versus*

LCMC Health Holdings, Incorporated; Louisiana Children's Medical Center,

*Defendants—Appellants.*

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:23-CV-411

_____

Before Jolly, Smith, and Haynes, *Circuit Judges.*

E. Grady Jolly, *Circuit Judge*:

This data privacy dispute presents a question of federal officer removal jurisdiction—the only issue we address in this appeal. Pebbles Martin filed this class action suit alleging that LCMC Health Holdings and Louisiana Children's Medical Center (collectively, "LCMC") violated Louisiana law. Specifically, Martin alleges that LCMC embedded tracking pixels onto its website that shared her private health information with third-party websites. As we have indicated, the question before us is not to determine the merits of Martin's claims, but instead to determine which

No. 23-30522

forum—state or federal—is proper to hear this dispute. LCMC argues that the suit should proceed in federal court because LCMC acted under the direction of a federal officer when, as the plaintiffs contend, it allegedly violated Louisiana law. On the other hand, Martin urges that the suit remain in state court because LCMC fails to show a basis for federal jurisdiction.

This circuit has not addressed whether a hospital acts under the direction of a federal officer when embedding tracking pixels onto its website where patients may access their medical records. Today, we join at least two other circuits in deciding that a hospital does not act under the direction of the federal government when it maintains an online patient portal that utilizes tracking pixels. Thus, it follows that the federal officer removal statute does not provide jurisdiction for this case to be heard in federal court. Accordingly, we AFFIRM the district court's order remanding this case to state court.

I.

Nearly twenty years ago, in 2004, President Bush signed an executive order establishing a National Health Information Technology Coordinator to develop nationwide infrastructure for interoperable health information technology. Exec. Order No. 13,335, 69 Fed. Reg. 24,059 (Apr. 27, 2004). Five years later, Congress enacted the Health Information Technology for Economic and Clinical Health (HITECH) Act, Pub. L. No. 111–5, 123 Stat. 226. The HITECH Act codified President Bush's executive order and established a permanent office for the National Coordinator for Health Information Technology within the U.S. Department of Health and Human Services ("HHS"). 42 U.S.C. § 300jj-11.

The goal of the HITECH Act is to encourage healthcare providers to adopt and use health information technology, such as interoperable electronic heath records (EHRs). *Id.* at § 300jj-11(b). With this goal in

mind, the HITECH Act directs HHS to make incentive payments to Medicare- and Medicaid-participating providers that implement EHRs. 42 U.S.C. § 1395w-4(o). To determine which providers should receive the incentive payments, HHS promulgated "Meaningful Use" requirements and pays the incentive payments to providers who comply with the requirements.[1] Medicare and Medicaid Programs; Electronic Health Record Incentive Program, 75 Fed. Reg. 44,314 (July 28, 2010) (to be codified at 42 C.F.R. pts. 412, 413, 422, and 495). These incentive payments aim to encourage providers to allow patients to access their health records online. *See, e.g.,* 42 C.F.R. § 495.20(f)(12)(i)(B) and (ii)(B) (discussing various records patients should be able to view online). Eventually, the incentive payments were phased out and Medicaid and Medicare providers that did not comply with the Meaningful Use requirements are now penalized with payment reductions for inpatient and professional services rendered. *See id.* at § 495.2(g).

To comply with the Meaningful Use requirements, LCMC created the LCMC Health online patient portal in 2018. In the years that LCMC has satisfied the Meaningful Use requirements, it has received incentive payments for providing access to patient records online. Because it continues to comply with the Meaningful Use requirements, LCMC now avoids reductions in Medicaid fee-for-service reimbursements.

In January 2023, Pebbles Martin—a former LCMC patient who used the online portal—filed this class action against LCMC in the Orleans Parish Civil District Court. Martin's complaint alleges that LCMC embedded

---

[1] The Meaningful Use requirements set specific objectives that hospitals and providers must achieve to receive incentive payments.

tracking pixels[2] onto its website that allow third parties, such as Facebook, to access her private health information. The third parties then used the information for targeted online advertising. Martin contends that LCMC's use of these pixels violates the Louisiana Electronic Surveillance Act, La. R.S. § 15:1303, because LCMC tortiously intercepted and recorded Martin's wire communications and shared the private information to third parties. Martin further contends that LCMC was unjustly enriched because LCMC collected, used, and disclosed patients' private information for its gain, *i.e.*, for advertisement purposes, sale, or trade for valuable services from third parties. Martin seeks statutory damages[3] for her and the alleged class of patients whose privacy has been invaded. She also seeks injunctive relief.

LCMC timely removed the case to federal court, invoking the federal officer removal statute, 28 U.S.C. § 1442(a)(1), as the basis for jurisdiction. LCMC contends that it is entitled to litigate in a federal forum because it created and maintains the online patient portal to comply with the Meaningful Use requirements promulgated by HHS. In response to claims of federal jurisdiction, Martin moved to remand to state court. The district court granted Martin's motion, holding that LCMC did not act under HHS's direction when it disclosed private health information to third party websites. LCMC appeals the remand order.

_____

[2] A tracking pixel is a tiny, transparent image embedded in websites that collects information about website user behaviors and interactions.

[3] The Louisiana Electronic Surveillance Act authorizes three categories of civil damages that a successful plaintiff may recover: (1) actual liquidated damages, (2) reasonable attorney's fees and litigation costs, and (3) punitive damages. La. R.S. § 15:1312.

## II.

As we have noted, LCMC removed the case pursuant to the federal officer removal statute. The statute states, in pertinent part:

> A civil action or criminal prosecution that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:
>
> (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office. . .

28 U.S.C. § 1442(a)(1). This statute has particular importance to LCMC's appeal because remand orders generally cannot be reviewed on appeal. But when, as here, the case is removed under § 1442, we have jurisdiction to review the remand order. 28 U.S.C. § 1447(d) ("An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise, except that an order remanding a case to the State court from which it was removed pursuant to section 1442 or 1443 of this title shall be reviewable by appeal or otherwise."). We review the district court's remand order *de novo*. *Port of Corpus Christi Auth. of Nueces Cnty., Tex. v. Port of Corpus Christi L.P.*, 57 F.4th 432, 436 (5th Cir. 2023).

## III.

Thus, as we can see, the federal officer removal statute allows federal officers, and private entities assisting them, to remove cases to federal court that ordinarily would not be removable. *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 291 (5th Cir. 2020) (en banc). The purpose of the statute is to

give the designated classes of defendants "the protection of a federal forum" when they potentially incur liability under state law for performing "their duty to enforce the law." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969). Even in situations where the parties are not diverse and no federal question is raised in the complaint, § 1442 allows a case to be removed if the federal actor asserts a federal defense. *Latiolais*, 951 F.3d at 291.

We broadly construe the federal officer removal statute in favor of a federal forum. *Williams v. Lockheed Martin Corp.*, 990 F.3d 852, 859 (5th Cir. 2021) (internal quotations and citation omitted); *cf. Willingham*, 395 U.S. at 407 (urging courts to avoid a "narrow, grudging interpretation of § 1442(a)(1)"). But the statute is not limitless. *Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 147 (2007). Under this statute, our circuit authorizes removal by a private entity when four elements are met: (1) the defendant has asserted a colorable federal defense; (2) the defendant is a "person" within the meaning of the statute; (3) the defendant acted pursuant to a federal officer's directions; and (4) the charged conduct is connected or associated with an act pursuant to a federal officer's directions. *Latiolais*, 951 F.3d at 296. The absence of any element will defeat removal.

This case essentially turns on the third element: whether LCMC acted "pursuant to" a federal officer's direction. Specifically, our focus is whether LCMC acted pursuant to the direction of HHS when it created and operated its online portal, accepted federal incentive payments, and potentially incurred liability under Louisiana law through its use of tracking pixels.

To satisfy the "pursuant to" requirement, a private actor must go beyond mere compliance with the law and instead help the government "fulfill other basic governmental tasks." *Watson*, 551 U.S. at 153. Importantly, acting "pursuant to" a federal officer's directive does not include simply complying with the law, even if the law involves intense

governmental regulations. *Id.* at 152, 153. Stated differently: acting pursuant to a federal officer's directions means that the relationship between the government and the private entity extends beyond a regulator/regulated relationship and will typically involve a contractual agreement or agency relationship. *Id.* at 156–57.

Our recent jurisprudence is illustrative: the cases in which we have upheld federal officer removal involve relationships where the government has delegated legal authority to the private entity. For example, in *Latiolais*, we allowed federal officer removal when a former employee sued his employer, a federal contractor, for injuries sustained while performing work on behalf of the Navy. 951 F.3d at 289. Furthermore, in *St. Charles Surgical Hospital v. Louisiana Health Service & Indemnity Co.* we permitted the defendant insurance company to remove the suit because the insurance company contracted with the federal government and the government exercised a strong level of guidance and control over the company. 990 F.3d 447, 452 (5th Cir. 2021). Again, in *Butler v. Coast Electric Power Ass'n* we allowed federal officer removal when the private-entity-defendants were "instrumentalities" of the federal government that acted under a federal agency's direction with a shared goal. 926 F.3d 190, 201 (5th Cir. 2019). In each of these cases, the relationship with the government extended beyond a regulator/regulated relationship and involved the private actor performing some work that the federal government would otherwise have had to undertake. To the point, these cases involved "an effort to assist, or to help carry out, the duties or tasks of the federal superior." *Watson*, 551 U.S. at 152 (emphasis omitted).

This case is distinguishable from *Latiolais*, *St. Charles*, and *Butler*. Unlike the private entities in those cases, LCMC cannot show that its relationship with the government involved anything more than regulation. LCMC did not assist or carry out any tasks of the government, nor was it an

instrumentality of the government. Instead, the online patient portal was operated by LCMC and existed for the benefit of LCMC patients and staff. The operation of the online patient portal here is not pursuant to a federal officer's directive because the federal government would not have created an online patient portal if LCMC had chosen not to do so. *See Doe v. BJC Health Sys.*, 89 F.4th 1037, 1047 (8th Cir. 2023); *accord Mohr v. Trustees of Univ. of Pennsylvania*, 93 F.4th 100, 105 (3d Cir. 2024).

LCMC further contends, however, that it acted under a federal officer's directions because it created an online patient portal to avoid financial consequences. Indeed, the consequence for not complying with HHS's Meaningful Use requirements is that LCMC's Medicaid fee-for-services reimbursements will be reduced. But embedding tracking pixels onto its website had no bearing on LCMC's Medicaid reimbursements. LCMC was not required to embed tracking pixels onto its website when it created the online patient portal; neither would its reimbursements be reduced if it had not done so. Furthermore, as we hope we have made clear, LCMC's mere compliance with the Meaning Use regulations does not mean that LCMC acted pursuant to a federal officer's directive. *See Watson*, 551 U.S. at 153 ("A private firm's compliance (or noncompliance) with federal laws, rules, and regulations does not by itself fall within the scope of the statutory phrase 'acting under' a federal 'official.'" (quoting 28 U.S.C. § 1442)).

At bottom: LCMC's relationship with the federal government is too attenuated to show any delegation of legal authority, and consequently, LCMC cannot show that it acted pursuant to a federal officer's directions for purposes of federal officer removal. Because LCMC has failed to satisfy the requirement of acting pursuant to a federal officer's directive, we need not consider the other elements for federal officer removal jurisdiction.

## IV.

We conclude that the district court properly remanded the case to state court.  Accordingly, the district court's remand order is AFFIRMED and LCMC's motion to stay the remand order is DENIED AS MOOT.